[No. B166050. Second Dist., Div. One. Mar. 30, 2005.]

CONNIE ARMIJO, Plaintiff and Appellant, v.
JAMIE MILES et al., Defendants and Respondents.

COUNSEL

Law Offices of Diane Corwin, Diane Corwin; Law Office of David C. Codell, David C. Codell, Steve Kang and Aimee Dudovitz for Plaintiff and Appellant.

Horvitz & Levy, David M. Axelrad, Karen M. Bray, Jeremy B. Rosen; Herzfeld & Rubin, Michael A. Zuk and Roy D. Goldstein for Defendants and Respondents Jamie Miles and Labriute Medical Office, Inc.

Cassel Malm Fagundes, Joseph H. Fagundes; Rushfeldt, Shelley & Drake, and Kathryn S.M. Mosely for Defendant and Respondent Sherman Oaks Hospital and Health Center.

OPINION

**SPENCER, P. J.—**

## INTRODUCTION

Plaintiff Connie Armijo sued defendants Jamie Miles, M.D. (Miles), Labriute Medical Group Incorporated (Labriute) and Sherman Oaks Hospital and Health Center (Sherman Oaks Hospital) for the wrongful death of her domestic partner, Dana Schwartz (Dana). The trial court sustained defendants' demurrers to plaintiff's causes of action, concluding that plaintiff lacked standing to sue under the 2002 version of the wrongful death statute (Stats. 2001, ch. 893, § 2), in that she and Dana had not registered their domestic partnership with the Secretary of State.

Plaintiff appealed from the order and judgment dismissing her action. During the pendency of this appeal, and after the parties had filed their briefs, the Legislature amended the wrongful death statute (Stats. 2004, ch. 947, § 1). Based upon this amendment, which took effect on January 1, 2005 and which applies retroactively to plaintiff's wrongful death claim, we conclude the facts plaintiff alleged in her operative complaint are sufficient to establish her standing to sue for wrongful death. Accordingly, we reverse the judgment and remand for further proceedings.

## FACTS[1]

Plaintiff and Dana first met in 1987. After dating for six months, the two women made a decision to be committed to each other exclusively as "life partners and 'spouses.' "

Plaintiff and Dana jointly were responsible for each other's living expenses. During their relationship, neither woman entered into any other relationship or domestic partnership. They lived with one another, and, in 1998, they purchased a home together, where they resided until Dana's death.

Plaintiff and Dana were not related by blood in a way that would have prevented them from marrying each other if they could have been married. Each was over the age of 18 when they met and formed their relationship.

---

[1] In reviewing the trial court's order sustaining defendants' demurrers, we presume the material factual allegations in plaintiff's operative complaint, as well as those that may be implied or inferred therefrom, to be true. We disregard conclusions of law and factual allegations that are contrary to facts judicially noticed. (*Barratt American, Inc. v. City of San Diego* (2004) 117 Cal.App.4th 809, 812, fn. 2 [12 Cal.Rptr.3d 132]; *Marshall v. Gibson, Dunn & Crutcher* (1995) 37 Cal.App.4th 1397, 1403 [44 Cal.Rptr.2d 339].)

On August 6, 2001, Dana died at defendant Sherman Oaks Hospital, where she had been "hospitalized for pain management and associated rehabilitation." Miles, an employee of Labriute, had been Dana's physician.

## PROCEDURAL BACKGROUND

On August 20, 2002, plaintiff and Dana's sister, Lori Schwartz (who is not a party to this appeal), filed this wrongful death action against defendants. Their operative second amended complaint was filed on December 20, 2002. Plaintiff alleged that Dana died as the result of defendants' medical malpractice. Plaintiff sought compensatory damages, including compensation for the loss of love, companionship, comfort, affection, solace and moral support, that she suffered as a result of Dana's death. Plaintiff also sought compensation for burial and funeral expenses, as well as the loss of Dana's income and future earnings.

Defendants demurred to plaintiff's causes of action. Relying on Code of Civil Procedure section 377.60 (section 377.60 or the wrongful death statute) and Family Code section 297, defendants asserted that plaintiff lacked standing to sue them for wrongful death, in that she and Dana had failed to file a Declaration of Domestic Partnership with the Secretary of State.

Plaintiff opposed the demurrers. Although she acknowledged that she and Dana had not fulfilled the registration requirement necessary to establish a domestic partnership, she argued that they had fulfilled the statutory intent and underlying purpose of domestic partnership registration despite the lack of registration.

The trial court, believing it had no discretion in this matter, sustained the demurrers without leave to amend based on the failure to file a Declaration of Domestic Partnership with the Secretary of State. On May 7, 2003, the trial court dismissed all of plaintiff's causes of action with prejudice. This appeal followed.

## CONTENTIONS

The trial court's decision to sustain defendants' demurrers without leave to amend was based upon the 2002 version of the wrongful death statute. Plaintiff contends that under the most reasonable construction of that statute and the domestic partnership law, she need not allege that she and Dana registered their domestic partnership with the Secretary of State in order to establish standing. Plaintiff further contends that a registration requirement would run afoul of the state and federal equal protection clauses and that, apart from whether she and Dana were domestic partners under the 2002

wrongful death statute, she nevertheless was entitled to bring this lawsuit under the equal protection and privacy guarantees of the California Constitution and under the equal protection and due process provisions of the United States Constitution. We conclude that registration is a prerequisite for standing under the 2002 version of the wrongful death statute. We further conclude, however, that the 2005 version of the wrongful death statute affords plaintiff standing to sue. We therefore need not and do not address plaintiff's remaining constitutional contentions regarding the 2002 wrongful death statute.

With respect to the 2005 wrongful death statute, Assembly Bill No. 2580 (2003–2004 Reg. Sess.) (Assembly Bill 2580), defendants[2] contend that the Legislature amended the wrongful death statute for the sole purpose of changing the results in three cases presently on appeal. Defendants concede that the statute expressly provides that it is to have retroactive effect but contend that various constitutional provisions prevent the statute's retroactive application in this case. Defendants further contend that even if there is no constitutional impediment to the statute's retroactive application, Assembly Bill 2580 cannot be enforced because it violates Proposition 22, an initiative measure approved by California voters during the March 2000 election. For the reasons that follow, there is no merit to these contentions.

## DISCUSSION

### I. OVERVIEW OF PERTINENT STATUTORY PROVISIONS

In order to place the issues in this case into perspective, an understanding of the evolution of the wrongful death statute in relationship to California domestic partnership law is required. In 1999, the Legislature passed Assembly Bill No. 26 (Assembly Bill 26), which became effective on January 1, 2000. Among other things, Assembly Bill 26 added division 2.5, entitled "Domestic Partner Registration" (commencing with section 297), to the Family Code. (Stats. 1999, ch. 588, § 2.) This division set forth the definitions of domestic partners and domestic partnership, the procedural steps to be taken to register or to terminate a domestic partnership, the legal effect of registering a domestic partnership, and preemption provisions.

As originally enacted, Family Code section 299.5 provided that "[r]egistration as a domestic partner under this division shall not be evidence of, or

---

[2] Miles and Labriute, as well as Sherman Oaks Hospital, have filed a supplemental letter brief addressing the effect of Assembly Bill 2580. Sherman Oaks Hospital further "joins in the request of [Miles and Labriute] to file a supplemental letter brief in advance of oral argument to address the effect of the recent passage of assembly bill 2580." We construe this to be a request by Sherman Oaks Hospital to join in the letter brief filed by Miles and Labriute.

establish, any rights existing under law other than those expressly provided to domestic partners in this division and Section 1261 of the Health and Safety Code." Assembly Bill 26 "require[d] a health facility to allow a patient's domestic partner and other specific persons to visit a patient, except under specified conditions" and "authorize[d] state and local employers to offer health care coverage and other benefits to domestic partners." (Legis. Counsel's Digest, Assem. Bill 26.) The new legislation conferred no other rights.

When Dana died in August 2001, California's wrongful death statute did not confer standing on a surviving domestic partner. Legislation passed in 2001, shortly after Dana's death, changed this. On October 14, 2001, Assembly Bill No. .25 (Assembly Bill 25) (2001–2002 Reg. Sess.) (Stats. 2001, ch. 893) was enacted. Effective January 1, 2002, Assembly Bill 25 amended subdivision (a) of section 377.60 to add the decedent's surviving "domestic partner" to the list of individuals entitled to sue for wrongful death.

Assembly Bill 25 also added subdivision (f) to section 377.60, which specified that for purposes of the wrongful death statute, the term " 'domestic partners' has the meaning provided in Section 297 of the Family Code."[3] (Stats 2001, ch. 893, § 2.) Subdivision (d) of section 377.60, which prior to the 2002 amendment provided that the wrongful death statute "applies to any cause of action arising on or after January 1, 1993," was reenacted without

---

[3] Assembly Bill 25 amended Family Code section 297 to read: "(a) Domestic partners are two adults who have chosen to share one another's lives in an intimate and committed relationship of mutual caring.

"(b) A domestic partnership shall be established in California when all of the following requirements are met:

"(1) Both persons have a common residence.

"(2) Both persons agree to be jointly responsible for each other's basic living expenses incurred during the domestic partnership.

"(3) Neither person is married or a member of another domestic partnership.

"(4) The two persons are not related by blood in a way that would prevent them from being married to each other in this state.

"(5) Both persons are at least 18 years of age.

"(6) Either of the following:

"(A) Both persons are members of the same sex.

"(B) One or both of the persons meet the eligibility criteria under Title II of the Social Security Act as defined in 42 U.S.C. Section 402(a) for old-age insurance benefits or Title XVI of the Social Security Act as defined in 42 U.S.C. Section 1381 for aged individuals. Notwithstanding any other provision of this section, persons of opposite sexes may not constitute a domestic partnership unless one or both of the persons are over the age of 62.

"(7) Both persons are capable of consenting to the domestic partnership.

"(8) Neither person has previously filed a Declaration of Domestic Partnership with the Secretary of State pursuant to this division that has not been terminated under Section 299.

"(9) Both file a Declaration of Domestic Partnership with the Secretary of State pursuant to this division." (Stats. 2001, ch. 893, § 3.)

change, thereby reflecting the Legislature's clear intent that the 2002 amendment have retroactive application.

In 2003, the Legislature enacted Assembly Bill No. 205 (Assembly Bill 205) (2003–2004 Reg. Sess.), the California Domestic Partner Rights and Responsibilities Act of 2003. (Stats. 2003, ch. 421, § 2.) Among other things, Assembly Bill 205 amended Family Code section 297's definition of domestic partnership. (Stats. 2003, ch. 421, § 3.)

Assembly Bill 205 also significantly expanded the rights and protections provided to registered domestic partners. Specifically, it "extend[ed] the rights and duties of marriage to persons registered as domestic partners on and after January 1, 2005." (Legis. Counsel's Digest, Assem. Bill 205.) Assembly Bill 205 added section 297.5 to the Family Code. It provided in part: "(a) Registered domestic partners shall have the same rights, protections, and benefits, and shall be subject to the same responsibilities, obligations, and duties under law, whether they derive from statutes, administrative regulations, court rules, government policies, common law, or any other provisions or sources of law, as are granted to and imposed upon spouses." Family Code section 297.5 (Stats. 2003, ch. 421, § 4), and the amendment to Family Code section 297 (Stats. 2003, ch. 421, § 3), became operative on January 1, 2005. (Stats. 2003, ch. 421, § 14.)

In 2004, while this appeal was pending but after the parties had fully briefed this case, Assembly Bill 2580 was enacted into law (Stats. 2004, ch. 947, § 1). The Legislative Counsel's Digest to Assembly Bill 2580, as amended in the Senate August 16, 2004, states, in part, that "[e]xisting law provides that a cause of action for the wrongful death of a person may be asserted by his or her domestic partner, as defined. [¶] Under certain circumstances, this bill would allow a cause of action for wrongful death to proceed pursuant to the above although a Declaration of Domestic Partnership was not filed with the Secretary of State, if other specified requirements are met." (Italics omitted.)

Assembly Bill 2580 amended subdivision (f) of the wrongful death statute. Effective January 1, 2005, section 377.60, subdivision (f), provides: "(1) For the purpose of this section, 'domestic partner' means a person who, at the time of the decedent's death, was the domestic partner of the decedent in a registered domestic partnership established in accordance with subdivision (b) of Section 297 of the Family Code.

"(2) *Notwithstanding paragraph (1), for a death occurring prior to January 1, 2002, a person may maintain a cause of action pursuant to this section*

as a domestic partner of the decedent by establishing the factors listed in paragraphs (1) to (6), inclusive, of subdivision (b) of Section 297 of the Family Code, as it read pursuant to Section 3 of Chapter 893 of the Statutes of 2001, prior to its becoming inoperative on January 1, 2005.

"(3) The amendments made to this subdivision during the 2003–2004 Regular Session of the Legislature are not intended to revive any cause of action that has been fully and finally adjudicated by the courts, or that has been settled, or as to which the applicable limitations period has run." (Italics added.)

## II. UNDER THE 2002 VERSION OF THE WRONGFUL DEATH STATUTE, ONLY REGISTERED SURVIVING DOMESTIC PARTNERS HAVE STANDING TO SUE FOR WRONGFUL DEATH

We reject plaintiff's contention that under the 2002 wrongful death statute, registration of her partnership with Dana was not a prerequisite to her standing to sue for Dana's wrongful death. In *Holguin v. Flores* (2004) 122 Cal.App.4th 428 [18 Cal.Rptr.3d 749], Division Seven of this court held that registration as a domestic partnership was required in order for the surviving domestic partner to sue for the wrongful death of the deceased partner. The court reached this conclusion after an extensive review of the 2002 wrongful death statute, relevant provisions of the domestic partnership law and legislative history underlying those provisions. (*Id.* at pp. 434–437.)

We agree with *Holguin* and adopt its reasoning. Accordingly, we hold that a surviving domestic partner can sue for wrongful death under the 2002 version of the wrongful death statute only if at the time of the decedent's death the partnership had been registered with the Secretary of State. Inasmuch as plaintiff and Dana were not registered domestic partners at the time of Dana's death, and plaintiff could not amend her complaint to allege registration, the trial court correctly determined that plaintiff lacked standing to sue for Dana's wrongful death under the 2002 version of the wrongful death statute. We nevertheless must reverse the judgment because a subsequent amendment to the wrongful death statute, which amendment applies retroactively, confers on plaintiff the requisite standing even in the absence of partnership registration. We therefore need not and do not reach the merits of plaintiff's remaining contentions with respect to the 2002 wrongful death statute. We now turn to defendants' challenges to the 2005 wrongful death statute.

## III. THE LEGISLATURE PASSED ASSEMBLY BILL 2580 FOR THE PURPOSE OF CLARIFYING PREVIOUS LEGISLATION

Assembly Bill 2580 was a clean-up bill designed to clarify through technical changes that various provisions of the California Domestic Partner

Rights and Responsibilities Act (Fam. Code, § 297 et seq., added by Stats. 2003, ch. 421) apply to state-registered domestic partners. (Assem. Com. on Judiciary, Analysis of Assem. Bill 2580, as introduced Feb. 20, 2004, p. 1.) This particular bill was sparked by inquiries as to whether Assembly Bill 205 applied to domestic partners registered at one of the 59 local jurisdictions. (Assem. Com. on Judiciary, Analysis of Assem. Bill 2580, *supra*, p. 1.)

The August 10, 2004 Senate floor amendments to Assembly Bill 2580 sought to "clarify application of existing law to wrongful death actions brought by domestic partners . . . . Among the provisions amended by AB 25 was Section 377.60 of the Civil Code [*sic*], to allow domestic partners to assert wrongful death claims in the same manner as spouses. Apparently courts have interpreted the amendment made by AB 25 to Section 377.60 of the Civil Code,[4] as applied to deaths prior to its effective date of January 1, 2002, in different and conflicting ways. These amendments to AB 2580 clarify the application of the AB 25 amendments to those wrongful death actions. The amendments will not affect actions that have been adjudged or settled or where the statute of limitations has run." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill 2580, as amended Aug. 10, 2004, pp. 1–2.)

Contained in the legislative history materials supplied by plaintiff is a Senate Committee on the Judiciary "Background Information Request." Following as "background material in explanation of the bill," is a document entitled "Explanation of Proposed Amendment to Wrongful Death Statute (Code of Civil Procedure Section 377.60) for Possible Inclusion in AB 2580 (2004) (Goldberg)."[5]

This document references Assembly Bill 25, which amended the wrongful death statute effective January 1, 2002 by adding surviving domestic partners to the list of individuals who had standing to bring a wrongful death cause of action. Of particular interest is part C of the document entitled, "The Need for Clarification With Respect to Suits for Wrongful Deaths Occurring Prior to January 1, 2002." It explains that "[u]nfortunately, some of the plaintiffs for whom the Legislature contemplated that AB 25 would authorize recovery—that is, plaintiffs bringing wrongful death actions for pre-2002 deaths—have found themselves in a legal 'Catch-22' that the Legislature did not

---

[4] Assembly Bill 25 amended section 377.60 of the Code of Civil Procedure not the Civil Code.

[5] Background information requests are a proper source for ascertaining legislative intent. (*Florez v. Linens 'N Things, Inc.* (2003) 108 Cal.App.4th 447, 452 [133 Cal.Rptr.2d 465]; *Arthur Andersen v. Superior Court* (1998) 67 Cal.App.4th 1481, 1499–1500 [79 Cal.Rptr.2d 879]; *Forty-Niner Truck Plaza, Inc. v. Union Oil Co.* (1997) 58 Cal.App.4th 1261, 1284, fn. 11 [68 Cal.Rptr.2d 532].)

contemplate. During the lifetimes of their now-deceased partners, the plaintiffs that the Legislature expected to benefit from the retroactive availability of the wrongful death cause of action had no reason to expect that registration would entitle them to the protections of the wrongful death statute. Indeed, for the duration of years 2000 and 2001, Family Code section 299.5 expressly prohibited courts from considering registration as evidence of the right to bring any cause of action."

Part C further explains that lawsuits filed under Assembly Bill 25 with regard to pre-2002 deaths have resulted in incongruent holdings, necessitating clarification by the Legislature of the standing requirements. Such clarification effectively would conserve judicial resources in ongoing litigation by obviating the need for the Legislature to decide complex constitutional issues relating to same-sex partners' previous inability to sue for wrongful death. Claims barred by the statute of limitations would not be revived. In addition, legislative clarification would "confirm[] that these surviving partners have a fair and rational legal remedy, as was intended by AB 25."

The Legislature's decision to amend the wrongful death statute therefore was fueled by its recognition that Assembly Bill 25, as enacted, did not fully achieve its desired result—retroactive enjoyment of the benefit of the wrongful death statute by all surviving domestic partners for deaths occurring prior to January 1, 2002. References in the legislative materials to ongoing litigation and the disparate results reached therein served only to highlight the need for amendment of the wrongful death statute. Contrary to defendants' assertion, such references do not evince an intent on the part of the Legislature to usurp the function of the judiciary.

IV. *DEFENDANTS HAVE FAILED TO DEMONSTRATE THAT THERE IS A CONSTITUTIONAL IMPEDIMENT TO THE RETROACTIVE APPLICATION OF ASSEMBLY BILL 2580* [6]

Defendants concede that the wrongful death statute as amended by Assembly Bill 2580 provides that it is to apply retroactively. Defendants argue, however, that "it would be unconstitutional to apply AB 2580 retroactively here because: (1) it violates Dr. Miles' due process rights by substantively changing the law regarding wrongful death tort liability, thereby upsetting Dr. Miles' vested rights; (2) it violates the separation of powers by directing courts how to rule on pending appeals; (3) it constitutes an unconstitutional bill of attainder by singling out for punishment a small discreet group of defendants and [violates the prohibition against ex post facto laws; and] (4) it

---

[6] At no time in their demurrers did defendants argue that the 2002 version of the wrongful death statute could not be applied retroactively in this case. On appeal, Sherman Oaks Hospital concedes "that [Dana's] passing falls within the time limits dictated by A.B. 25."

violates Dr. Miles' equal protection rights by treating her differently from other similarly situated doctors who will not be liable in wrongful death actions brought by surviving non-registered domestic partners." As we now explain, each of defendants' constitutional challenges lacks merit. We discuss each in turn.

## A. *Due Process*

Defendants contend that it would be unconstitutional to apply Assembly Bill 2580's amendment of the wrongful death statute retroactively. In defendants' view, Assembly Bill 2580 is a legislative act that deprives them of a vested right without due process of law. We disagree.

Our state's high court has long held that the retroactive application of a statute may be unconstitutional if it deprives an individual of a vested right without due process of law. (*In re Marriage of Buol* (1985) 39 Cal.3d 751, 756, 758 [218 Cal.Rptr. 31, 705 P.2d 354].) "A right is 'vested' when it is ' "already possessed" ' or ' "legitimately acquired." ' " (*Standard Oil Co. v. Feldstein* (1980) 105 Cal.App.3d 590, 605 [164 Cal.Rptr. 403], quoting *Harlow v. Carleson* (1976) 16 Cal.3d 731, 735 [129 Cal.Rptr. 298, 548 P.2d 698].)

The right to sue for wrongful death by a person on whom the Legislature has conferred such right vests on the decedent's death. Once that right has vested, the Legislature cannot impair it. (*Wexler v. City of Los Angeles* (1952) 110 Cal.App.2d 740, 747 [243 P.2d 868].) Defendants assert that "[s]imple fairness dictates that the reverse must also be true—where a potential wrongful death defendant is protected by the law from any liability at the time of decedent's death the Legislature should be barred from retroactively imposing liability where none existed before." We reject this argument.

Defendants do not cite to any California or federal case law that compels the conclusion that a person who wrongfully or negligently causes another's death has a right, vested or otherwise, to have the class of potential plaintiffs frozen as of the time of death. Expansion of the class of plaintiffs who can sue for wrongful death does not change the legal definition of negligence, the standard by which liability is assessed, or the character of defendants' acts or omissions. It simply enlarges the class of plaintiffs to whom defendants may be liable for their purported negligence.

Defendants' reliance on *Theodosis v. Keeshin Motor Express Co.* (1950) 341 Ill.App. 8 [92 N.E.2d 794] is misplaced. In *Theodosis*, the question before the Illinois appellate court was whether the Injuries Act of 1947,

which increased the limit of recovery from $10,000 to $15,000, should be construed to apply retroactively. (92 N.E.2d at p. 795.) The Illinois court concluded that it could not be applied retroactively based on case law and a specific statute prohibiting retroactive application of statutes. (*Id.* at pp. 795–802.) *Theodosis* did not bar retroactive application of the Injuries Act of 1947 on due process grounds. *Theodosis* is of no aid to defendants and, in any event, we are not bound by the decisions of courts of other states. We conclude that defendants have not demonstrated a due process violation.[7]

## B. *Separation of Powers*

Defendants contend that Assembly Bill 2580 violates the separation of powers doctrine "by attempting to legislate judicial interpretation of the AB 25 amendment." More specifically, defendants maintain that "AB 2580 constitutes an impermissible legislative intrusion into the function of the courts because the Legislature is purporting to make findings interpreting the meaning of an existing statute. But interpreting a statute and determining whether it is ambiguous is the role of the courts, not the Legislature. Such an intrusion into the judicial function should not be permitted. Accordingly, AB 2580 should not be applied in this case." We disagree with defendants' characterization of Assembly Bill 2580.

■ "Separation of powers principles do not preclude the Legislature from amending a statute and applying the change to both pending and future cases, though any such law cannot 'readjudicat[e]' or otherwise 'disregard' judgments that are already 'final.' [Citation.]" (*People v. Bunn* (2002) 27 Cal.4th 1, 17 [115 Cal.Rptr.2d 192, 37 P.3d 380]; accord, *McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467, 473–474, 476 [20 Cal.Rptr.3d 428, 99 P.3d 1015].) ■ Although the Legislature's intent in passing Assembly Bill 2580 was to "clarify" existing law, the portion of Assembly Bill 2580 that retroactively amends the wrongful death statute to allow nonregistered partners to sue for wrongful death constitutes a *change* in the law designed to fill a gap left open by Assembly Bill 25. We do not construe Assembly Bill 2580's amendment of the wrongful death statute to be "a subsequent legislative declaration as to the meaning of a preexising statute," which in any event would not be binding or conclusive. (*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 1007 [90 Cal.Rptr.2d 236, 987 P.2d 705].) Defendants have failed to demonstrate a separation of powers violation.

---

[7] In addressing defendants' due process concerns, we have restricted ourselves to those specific and limited arguments raised by defendants. We observe, however, that *Bouley v. Long Beach Memorial Medical Center* (2005) 127 Cal.App.4th 601 [25 Cal.Rptr.3d 813], recently decided by Division Five of this court, contains an expanded and well-reasoned discussion as to why the retroactive application of the 2002 and 2005 amendments to the wrongful death statute does not violate due process. (*Id.* at pp. 607–613.)

## C. *Bill of Attainder*

■ There is no merit to defendants' assertion that Assembly Bill 2580, to the extent it amends the wrongful death statute retroactively, violates the federal and state constitutional proscriptions against passing a bill of attainder. (U.S. Const., art. I, § 9, cl. 3; *id.*, § 10, cl. 1; Cal. Const., art. I, § 9.) "[L]egislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial are bills of attainder prohibited by the Constitution." (*United States v. Lovett* (1946) 328 U.S. 303, 315–316 [90 L.Ed. 1252, 66 S.Ct. 1073, 106 Ct.Cl. 856]; accord, *Estate of Castiglioni* (1995) 40 Cal.App.4th 367, 377, fn. 17 [47 Cal.Rptr.2d 288]; *California State Employees' Assn. v. Flournoy* (1973) 32 Cal.App.3d 219, 225 [108 Cal.Rptr. 251].)

Apart from whether Assembly Bill 2580 applies to readily identifiable members of a particular group or constitutes punishment under a functional approach (*Sagaser v. McCarthy* (1986) 176 Cal.App.3d 288, 306 [221 Cal.Rptr. 746]), as defendants assert, defendants do not contend, let alone attempt to demonstrate, that the wrongful death statute, as amended by Assembly Bill 2580, punishes anyone without a trial. The 2005 version of the statute merely sets forth the standing requirements that a surviving domestic partner must fulfill in order to obtain access to the courts and maintain a wrongful death action for a death occurring prior to January 1, 2002. Defendants therefore have failed to demonstrate that Assembly Bill 2580 is an unconstitutional bill of attainder.

## D. *Ex Post Facto Law*

■ The United States Supreme Court has long recognized that "the constitutional prohibition on *ex post facto* laws applies only to penal statutes which disadvantage the offender affected by them." (*Collins v. Youngblood* (1990) 497 U.S. 37, 41 [111 L.Ed.2d 30, 110 S.Ct. 2715]; accord, *INS v. Lopez-Mendoza* (1984) 468 U.S. 1032, 1038–1039 [82 L.Ed.2d 778, 104 S.Ct. 3479]; *Calder v. Bull* (1798) 3 U.S. (3 Dall.) 386, 390–392 [1 L.Ed. 648] (opn. of Chase, J.); *id.*, at p. 396 (opn. of Paterson, J.); *id.*, at p. 400 (opn. of Iredell, J.).) We interpret our state ex post facto provision (Cal. Const., art. I, § 9) identically to that of its federal counterpart. (*People v. Grant* (1999) 20 Cal.4th 150, 158 [83 Cal.Rptr.2d 295, 973 P.2d 72]; *People v. McVickers* (1992) 4 Cal.4th 81, 84 [13 Cal.Rptr.2d 850, 840 P.2d 955]; *Pro-Family Advocates v. Gomez* (1996) 46 Cal.App.4th 1674, 1683, fn. 11 [54 Cal.Rptr.2d 600].)

Defendants acknowledge that we are powerless to set aside the United States Supreme Court's determination that the ex post facto clause applies

only to criminal laws. Nevertheless, in an effort to preserve the issue for any future petition for writ of certiorari, defendants argue that "the ex post facto clause applies to civil cases and would operate independently to invalidate the Legislature's attempt to retroactively apply AB 2580 to this case." We reject this argument.

### E. *Equal Protection*

Defendants assert that application of Assembly Bill 2580 to this case would violate the equal protection clause. They maintain that "the Legislature acknowledges that there are perhaps only three cases in the entire state which will be affected by this new statute. . . . Thus, Dr. Miles will be treated very differently from the numerous other doctors and medical groups who were sued by non-registered domestic partners for wrongful deaths that occurred prior to 2002 and who were not subject to any liability. There is no rational basis to create liability for Dr. Miles and two others when all other doctors in the state are immunized from any similar liability." There is no merit to this assertion.

■ "In order to withstand an equal protection challenge, ordinarily a legislative classification need only bear a rational relationship to a conceivable legitimate state purpose." (*In re Marriage of Carpenter* (1986) 188 Cal.App.3d 604, 617 [231 Cal.Rptr. 783, 233 Cal.Rptr. 510].) Although Miles and Labriute cite numerous cases as authority for general principles of constitutional law, they cite no authority and no facts establishing that Assembly Bill 2580 actually violates their right to equal protection of the law.

We reject outright their specious suggestion that Assembly Bill 2580 was enacted for the purpose of subjecting Miles and two other individuals to liability. Assembly Bill 2580 was not designed to target any particular defendant. Under the 2005 version of the wrongful death statute, any person whose purported negligence resulted in the death of a domestic partner prior to January 1, 2002 can be sued by the surviving domestic partner if certain factors can be established. That Assembly Bill 2580, practically speaking, may apply only in a limited number of cases does not render the legislation unconstitutional. Defendants have failed to demonstrate that under Assembly Bill 2580 they will be treated differently from similarly situated defendants.

■ Moreover, the Legislature had a rational basis for amending the wrongful death statute. Effective January 1, 2002, Assembly Bill 25 conferred upon surviving domestic partners standing to sue for wrongful death, including deaths occurring prior to January 1, 2002. Prior to January 1, 2002, however, the rights afforded to registered domestic partners were extremely limited and did not include the right to sue for wrongful death. Prior to

January 1, 2002, domestic partners thus could not have foreseen that registration would entitle them to the protection of the wrongful death statute. Recognizing that for many domestic partners, the incentive to register their partnerships might not have existed prior to January 1, 2002 because of the very limited rights registration afforded, the Legislature amended the wrongful death statute so that nonregistered domestic partners whose partners died prior to January 1, 2002 could benefit from the wrongful death statute. This legislation is not irrational in the constitutional sense and thus does not violate equal protection.[8]

## V. *PLAINTIFF ALLEGED FACTS SUFFICIENT TO PLEAD STANDING UNDER THE 2005 VERSION OF THE WRONGFUL DEATH STATUTE*

A wrongful death plaintiff is required to plead and prove standing to sue. (*Nelson v. County of Los Angeles* (2003) 113 Cal.App.4th 783, 789 [6 Cal.Rptr.3d 650].) Having determined that there is no constitutional impediment to applying the 2005 version of the wrongful death statute in this case, we proceed to determine whether plaintiff alleged facts sufficient to establish her standing to sue for the wrongful death of Dana.

■ Under the current wrongful death statute, for deaths occurring before January 1, 2002, a surviving same-sex domestic partner may maintain a cause of action for wrongful death by establishing the following six factors set forth in former Family Code section 297, subdivision (b):

"(1) Both persons [had] a common residence.

"(2) Both persons agree[d] to be jointly responsible for each other's basic living expenses incurred during the domestic partnership.

"(3) Neither person [was] married or a member of another domestic partnership.

"(4) The two persons [were] not related by blood in a way that would [have] prevent[ed] them from being married to each other in this state.

"(5) Both persons [were] at least 18 years of age.

"(6) . . . [¶] (A) Both persons [were] members of the same sex." (Former Fam. Code, § 297, subd. (b), as amended by Stats. 2001, ch. 893, § 3; see Code Civ. Proc., § 377.60, subd. (f)(2).)

---

[8] *Cunningham v. Superior Court* (1986) 177 Cal.App.3d 336 [222 Cal.Rptr. 854], cited by Sherman Oaks Hospital, is factually inapposite and does not establish an equal protection violation in this case.

A review of plaintiff's operative complaint readily reveals that it contains factual allegations satisfying each of these six criteria. Plaintiff and Dana were members of the same sex. The women jointly were responsible for each other's living expenses. They lived together in a common residence and ultimately purchased a home together. Plaintiff and Dana were not related by blood in a way that would have prevented them from getting married if they could have been married, and each was over the age of 18 when they met and formed their relationship. These allegations are sufficient to establish plaintiff's standing to sue under the 2005 version of the wrongful death statute. We therefore conclude that plaintiff has stated a cause of action for wrongful death against defendants.

## VI. ASSEMBLY BILL 2580 DOES NOT VIOLATE PROPOSITION 22, THE INITIATIVE MEASURE APPROVED BY CALIFORNIA VOTERS IN 2000

On March 7, 2000, California voters approved Proposition 22, commonly known as the Knight Initiative or the California Defense of Marriage Act. This successful initiative measure (Cal. Const., art. II, § 8) added section 308.5 to the Family Code. It specifies that "[o]nly marriage between a man and a woman is valid or recognized in California."

Defendants contend that Assembly Bill 2580 violates Family Code section 308.5 by "impermissibly overturn[ing] the will of the voters as expressed through the passage of Proposition 22." Marriage, defendants assert, "is more than just a name given to a particular relationship. By its terms, it also includes the benefits and status afforded by society to those individuals who have entered into the relationship." In defendants' view, "Proposition 22 must be read to mean that the benefits that are incidental to marriage are limited solely to opposite sex couples" and that "the Legislature's decision to provide domestic partners with marital benefits such as the ability to sue for wrongful death, is prohibited by Proposition 22."

When interpreting a voter initiative, we apply the same principles applicable to the construction of statutes. We look first to the language of the statute and give the words their commonplace meaning. (*People v. Rizo* (2000) 22 Cal.4th 681, 685 [94 Cal.Rptr.2d 375, 996 P.2d 27].) "The statutory language must also be construed in the context of the statute as a whole and the overall statutory scheme. [Citation.] When the language is ambiguous, 'we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet.' [Citation.]" (*Ibid.*) Stated otherwise, "our 'task is simply to interpret and apply the initiative's language so as to effectuate the electorate's intent.' [Citation.]" (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 900–901 [135 Cal.Rptr.2d 30, 69 P.3d 951].)

Family Code section 300, then and now, defines marriage as "a personal relation arising out of a civil contract between a man and a woman, to which the consent of the parties capable of making that contract is necessary. . . ." Family Code section 301, then and now, provides that "[a]n unmarried male of the age of 18 years or older, and an unmarried female of the age of 18 years or older, and not otherwise disqualified, are capable of consenting to and consummating marriage."

To shed light on the fundamental underpinnings of Proposition 22, we deem it appropriate to refer to other indicia of the voters' intent. (*People v. Rizo, supra,* 22 Cal.4th at p. 685.) We look first to the ballot's legislative analysis and then to the arguments contained in the official ballot pamphlet to ascertain the intent of the voters. (*Robert L. v. Superior Court, supra,* 30 Cal.4th at p. 906.)

The Legislative Analyst explained the background of Proposition 22 as follows: "Under current California law, 'marriage' is based on a civil contract between a man and a woman. Current law also provides that a legal marriage that took place outside of California is generally considered valid in California. No state in the nation currently recognizes a civil contract or any other relationship between two people of the same sex as a marriage." (Ballot Pamp., Primary Elec. (Mar. 7, 2000) analysis of Prop. 22 by Legis. Analyst, p. 51.) The law to which the Legislative Analyst made reference was Family Code section 308. Enacted in 1992 (Stats. 1992, ch. 162, § 10, p. 476) and operative January 1, 1994, Family Code section 308 provides that "[a] marriage contracted outside this state that would be valid by the laws of the jurisdiction in which the marriage was contracted is valid in this state."

The argument in favor of Proposition 22 consisted of a letter written by a 20-year-old voter. In part, it states: "When people ask, 'Why is [Proposition 22] necessary?' I say that even though California law already says only a man and a woman may marry, it also recognizes marriages from other states. However, judges in some of those states want to define marriage differently than we do. If they succeed, California may have to recognize new kinds of marriages, even though most people believe marriage should be between a man and a woman." (Ballot Pamp., Primary Elec. (Mar. 7, 2000) argument in favor of Prop. 22, p. 52.) That Proposition 22 would prohibit California from recognizing as valid a same-sex marriage solemnized beyond its borders is also reflected in the Rebuttal to Argument Against Proposition 22: "Opponents say Proposition 22 is unnecessary. [¶] THE TRUTH IS, *UNLESS WE PASS PROPOSITION 22, LEGAL LOOPHOLES COULD FORCE CALIFORNIA TO RECOGINIZE 'SAME-SEX MARRIAGES' PERFORMED IN OTHER STATES.* [¶] That's why 30 other states and the federal government have passed laws to close these loopholes. California deserves the same choice." (*Id.,* rebuttal to argument against Prop. 22, p. 53.)

The legislative analysis and the ballot arguments readily demonstrate that Proposition 22 was crafted with a prophylactic purpose in mind. It was designed to prevent same-sex couples who could marry validly in other countries or who in the future could marry validly in other states from coming to California and claiming, in reliance on Family Code section 308, that their marriages must be recognized as valid marriages. With the passage of Proposition 22, then, only opposite-sex marriages validly contracted outside this state will be recognized as valid in California. Same-sex marriages will be given no recognition.

The question remaining is whether the portion of Assembly Bill 2580 that amends the wrongful death statute subverts Proposition 22. Defendants' position that it does is based on the faulty premise that the right to sue for wrongful death is an exclusive benefit of marriage. It is not.

At common law, personal tort claims expired when either the victim or the tortfeasor died. (*Willis v. Gordon* (1978) 20 Cal.3d 629, 637 [143 Cal.Rptr. 723, 574 P.2d 794] (conc. opn. of Mosk, J.).) Today, a cause of action for wrongful death exists only by virtue of legislative grace. (*Rosales v. Battle* (2003) 113 Cal.App.4th 1178, 1182 [7 Cal.Rptr.3d 13]; accord, *Nelson v. County of Los Angeles, supra*, 113 Cal.App.4th at p. 789.) The statutorily created "wrongful death action does not effect a survival of the decedent's cause of action, it 'gives to the representative a totally new right of action, on different principles. [Citation.]" (*Willis, supra*, at p. 637 (conc. opn. of Mosk, J.).) "The statute limits the right of recovery to a class of persons who, because of their relation to the deceased, are presumed to be injured by his death." (*Nelson, supra*, at p. 789, fn. 6.) This class of individuals includes the decedent's "surviving spouse, domestic partner, children, and issue of deceased children, or, if there is no surviving issue of the decedent, the persons, including the surviving spouse or domestic partner, who would be entitled to the property of the decedent by intestate succession." (§ 377.60, subd. (a).) Thus, by no means is the right to sue for wrongful damages limited to spouses.

Nothing in Assembly Bill 2580 validates same-sex marriages in California. In fact, it has nothing at all to do with marriage. As relevant to this case and the limited issue before us—whether plaintiff stated a cause of action for wrongful death—Assembly Bill 2580 simply establishes that the right to sue for wrongful death belongs to registered domestic partners (whether they be same-sex or opposite-sex partners), except that for deaths occurring prior to January 1, 2002, the right to sue for wrongful death also belongs to nonregistered surviving domestic partners who, like plaintiff, can satisfy six specific criteria.

## DISPOSITION

The order and judgment of dismissal are reversed and the matter is remanded for further proceedings. The trial court is directed to vacate its order sustaining defendants' demurrers, to enter a new order overruling them, and to grant defendants time to file their answers. The parties are to bear their own costs on appeal.

Mallano, J., and Suzukawa, J.,* concurred.

A petition for a rehearing was denied April 21, 2005, and respondents' petition for review by the Supreme Court was denied June 15, 2005.

---

*Judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.