[No. G038437. Fourth Dist., Div. Three. May 6, 2008.]

In re the Domestic Partnership of DARRIN ELLIS and DAVID JAMES ARRIAGA.
DARRIN ELLIS, Appellant, v.
DAVID JAMES ARRIAGA, Respondent.

COUNSEL

Lambda Legal Defense and Education Fund, Jennifer C. Pizer, Tara L. Borelli; Long Beach Law, Rebecca J. Birmingham, A. Stephanie Loftin and Sharon L. Taylor for Appellant.

Edmund G. Brown, Jr., Attorney General, Christopher E. Krueger, Assistant Attorney General, Douglas J. Woods and Kathleen A. Lynch, Deputy Attorneys General, for the State of California as Amicus Curiae on behalf of Appellant.

No appearance for Respondent.

OPINION

FYBEL, J.—

INTRODUCTION

We hold: Under the California Domestic Partner Rights and Responsibilities Act of 2003 (Stats. 2003, ch. 421) (the Domestic Partner Act), and consistent with the rationale of our Supreme Court in *Koebke v. Bernardo Heights Country Club* (2005) 36 Cal.4th 824 [31 Cal.Rptr.3d 565, 115 P.3d 1212] (*Koebke*), a person's reasonable, good faith belief that his or her domestic partnership was validly registered with the California Secretary of State entitles that person to the rights and responsibilities of a registered domestic partner, even if the registration never took place.

The California Legislature's stated purpose in enacting the Domestic Partner Act was to extend to registered domestic partners all the rights, benefits, and obligations of married persons, with the exception of the rights, benefits, and obligations accorded only to married persons by federal law, the California Constitution, or initiative statutes. Under the equitable putative spouse doctrine, a person's reasonable, good faith belief that his or her marriage is valid entitles that person to the benefits of marriage, even if the marriage is not, in fact, valid. The doctrine is not accorded by federal law, the California Constitution, or a voter initiative. It therefore extends to those who intended to register their domestic partnerships under the Domestic Partner Act and had a reasonable, good faith belief that the registration had occurred, despite the failure to properly complete the registration. As a result, a person may plead and attempt to prove that he or she is entitled to the rights and responsibilities of a registered domestic partner under these circumstances.

In this case, the trial court dismissed a petition for dissolution of a domestic partnership because the domestic partnership had never been registered with the California Secretary of State. Appellant submitted a declaration in opposition to respondent's motion to dismiss the petition stating he believed his partner had completed the registration process with the state after they signed and had notarized the necessary documents. We conclude the trial court erred by granting the motion to dismiss the petition without permitting appellant an opportunity to plead and prove a reasonable, good faith belief in the existence of a registered domestic partnership; we therefore reverse.

We decide this case by applying well-settled and uncontroversial principles of statutory construction, driven by the Legislature's express stated intent in enacting the Domestic Partner Act. We do not reach other, broader issues urged by appellant.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

On September 8, 2006, Darrin Ellis filed a petition for dissolution of his domestic partnership with David James Arriaga. Ellis alleged the domestic partnership had been registered on August 14, 2003.

Arriaga filed a motion to dismiss the petition, arguing the declaration of domestic partnership, which he and Ellis signed and had notarized on August 14, 2003, had never been filed with the California Secretary of State, and no domestic partnership had therefore been formed.

The trial court granted the motion to dismiss, concluding putative status was unavailable to domestic partners who had not registered with the California Secretary of State.

Ellis timely appealed.

DISCUSSION

I.

*STANDARD OF REVIEW*

■ This case involves an interpretation of statutes; our review is de novo. (*McKee v. Orange Unified School Dist.* (2003) 110 Cal.App.4th 1310, 1316 [2 Cal.Rptr.3d 774].) "In construing a statute, our fundamental task is to ascertain the Legislature's intent so as to effectuate the purpose of the statute. [Citation.] We begin with the language of the statute, giving the words their usual and ordinary meaning. [Citation.] The language must be construed 'in the context of the statute as a whole and the overall statutory scheme, and we give "significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." ' [Citation.] In other words, ' "we do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' [Citation.]" ' [Citation.] If the statutory terms are ambiguous, we may examine extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] In such circumstances, we choose the construction that comports most closely with the Legislature's apparent intent, endeavoring to promote rather than defeat the statute's general purpose, and avoiding a construction that would lead to absurd consequences. [Citation.]" (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83 [45 Cal.Rptr.3d 394, 137 P.3d 218].)

## II.

### PUTATIVE SPOUSE DOCTRINE

We start by considering the putative spouse doctrine, an equitable doctrine first recognized by the judiciary, and later codified by the Legislature. In 1943, our Supreme Court recognized, "[i]t is well settled that a woman who lives with a man as his wife in the belief that a valid marriage exists, is entitled upon termination of their relationship to share in the property acquired by them during its existence. [Citations.] . . . [¶] The essential basis of a putative marriage, however, is a belief in the existence of a valid marriage. [Citations.] In addition, in the majority of cases, the de facto wife attempted to meet the requisites of a valid marriage, and the marriage proved invalid only because of some essential fact of which she was unaware, such as the earlier undissolved marriage of one of the parties [citations], a consanguineous relation between the parties [citations], or the failure to meet the requirement of solemnization. [Citations.]" (*Vallera v. Vallera* (1943) 21 Cal.2d 681, 683–684 [134 P.2d 761].)

In 1969, the Legislature codified the putative spouse doctrine in Civil Code former section 4452. That statute used language almost identical to that in Family Code section 2251, subdivision (a), which contains the current version of the putative spouse doctrine and provides in relevant part: "If a determination is made that a marriage is void or voidable and the court finds that either party or both parties believed in good faith that the marriage was valid, the court shall: [¶] (1) Declare the party or parties to have the status of a putative spouse." Relief under the putative spouse doctrine is not precluded even if the circumstances do not establish either a void or voidable marriage. (*Estate of DePasse* (2002) 97 Cal.App.4th 92, 107 [118 Cal.Rptr.2d 143]; *In re Marriage of Vryonis* (1988) 202 Cal.App.3d 712, 718 [248 Cal.Rptr. 807].) "[T]he codification of the putative marriage doctrine in [Civil Code former] section 4452 was not intended to narrow the application of the doctrine only to parties to a void or voidable marriage. Instead, the Legislature contemplated the continued protection of innocent parties who believe they were validly married." (*In re Marriage of Vryonis, supra*, 202 Cal.App.3d at p. 719.)

The good faith belief that a marriage has been validly entered into is tested by an objective, not a subjective standard. (*Estate of DePasse, supra*, 97 Cal.App.4th at pp. 107–108.) "[A] proper assertion of putative spouse status must rest on facts that would cause a reasonable person to harbor a good faith belief in the existence of a lawful California marriage." (*Id.* at p. 108.)

### III.

### *THE DOMESTIC PARTNER ACT*

Before the enactment of the Domestic Partner Act, the rights granted to registered domestic partners in California were specifically enumerated, and "[r]egistration as a domestic partner under this division shall not be evidence of, or establish, any rights existing under law other than those expressly provided to domestic partners in this division and any provision of law specifically referring to domestic partners." (Fam. Code, former § 299.5, subd. (a); see *Armijo v. Miles* (2005) 127 Cal.App.4th 1405, 1411–1412 [26 Cal.Rptr.3d 623].) Various legislative enactments and amendments gave registered domestic partners a variety of rights and responsibilities. (See, e.g., Civ. Code, § 1714.01, subd. (a) [standing for negligent infliction of emotional distress claim]; Code Civ. Proc., § 377.60, subd. (a) [standing for wrongful death claim]; Fam. Code, § 6228, subd. (g)(1)(C) [access to domestic violence incident reports]; Fam. Code, § 9000, subd. (b) [eligibility for stepparent adoption procedures]; Gov. Code, former § 22871.2, subd. (a) [continuing health care coverage for domestic partners of deceased public employees]; Gov. Code, § 31780.2, subd. (a) [death benefits for surviving domestic partners of county employees]; Health & Saf. Code, § 103526, subd. (c)(4) [access to copies of domestic partner's birth and death records]; Prob. Code, § 6401, subd. (c) [intestate rights]; Prob. Code, § 21351, subd. (a) [exemption from prohibition against donative transfers to drafter of will]; Unemp. Ins. Code, §§ 2708, 3300–3303 [wage replacement benefits for employees caring for ill domestic partners].)

██ With its enactment in 2003, the Domestic Partner Act changed the entire manner in which rights are granted to and responsibilities are imposed on registered domestic partners.[1] As compared to the former system of

---

[1] The Domestic Partner Act defines domestic partners and sets forth the procedures for registering as domestic partners: "(a) Domestic partners are two adults who have chosen to share one another's lives in an intimate and committed relationship of mutual caring. [¶] (b) A domestic partnership shall be established in California when both persons file a Declaration of Domestic Partnership with the Secretary of State pursuant to this division, and, at the time of filing, all of the following requirements are met: [¶] (1) Both persons have a common residence. [¶] (2) Neither person is married to someone else or is a member of another domestic partnership with someone else that has not been terminated, dissolved, or adjudged a nullity. [¶] (3) The two persons are not related by blood in a way that would prevent them from being married to each other in this state. [¶] (4) Both persons are at least 18 years of age. [¶] (5) Either of the following: [¶] (A) Both persons are members of the same sex. [¶] (B) One or both of the persons meet the eligibility criteria under Title II of the Social Security Act as defined in 42 U.S.C. Section 402(a) for old-age insurance benefits or Title XVI of the Social Security Act as defined in 42 U.S.C. Section 1381 for aged individuals. Notwithstanding any other provision of this section, persons of opposite sexes may not constitute a domestic

granting specific, limited rights, the Domestic Partner Act "extends to registered domestic partners substantially all rights, benefits, and obligations of married persons under state law, with the exception of rights, benefits, and obligations accorded only to married persons by federal law, the California Constitution, or initiative statutes." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 205 (2003–2004 Reg. Sess.) as amended Aug. 21, 2003, p. 2; see *Armijo v. Miles, supra,* 127 Cal.App.4th at p. 1413.)

The Domestic Partner Act requires us to liberally interpret its reach in the same way as the laws of California apply to spouses, except as to the rights and benefits only afforded to married persons by law. The Domestic Partner Act states: "This act shall be construed liberally in order to secure to eligible couples who register as domestic partners the full range of legal rights, protections and benefits, as well as all of the responsibilities, obligations, and duties to each other, to their children, to third parties and to the state, as the laws of California extend to and impose upon spouses." (Stats. 2003, ch. 421, § 15.)

Under the Domestic Partner Act, "[r]egistered domestic partners shall have the same rights, protections, and benefits, and shall be subject to the same responsibilities, obligations, and duties under law, whether they derive from statutes, administrative regulations, court rules, government policies, common law, or any other provisions or sources of law, as are granted to and imposed upon spouses." (Fam. Code, § 297.5, subd. (a).) As our Supreme Court opined, "[i]t is clear from both the language of [Family Code] section 297.5 and the Legislature's explicit statements of intent that a chief goal of the Domestic Partner Act is to equalize the status of registered domestic partners and married couples." (*Koebke, supra,* 36 Cal.4th at p. 839.)

The rights and responsibilities of domestic partners upon separation are in the category of the rights and responsibilities to be decided by a court under the Domestic Partner Act. Significantly, Family Code section 299, subdivision (d), states: "The superior courts shall have jurisdiction over all proceedings relating to the dissolution of domestic partnerships, nullity of domestic partnerships, and legal separation of partners in a domestic partnership. *The dissolution of a domestic partnership, nullity of a domestic partnership, and legal separation of partners in a domestic partnership shall follow the same procedures, and the partners shall possess the same rights, protections, and benefits, and be subject to the same responsibilities, obligations, and duties, as apply to the dissolution of marriage, nullity of marriage, and legal separation of spouses in a marriage, respectively* . . . ." (Italics added.)

partnership unless one or both of the persons are over the age of 62. [¶] (6) Both persons are capable of consenting to the domestic partnership." (Fam. Code, § 297.)

■   To summarize, the Domestic Partner Act provides (1) it must be construed liberally to give registered domestic partners the same rights and obligations as married couples, to the extent permissible by law; and (2) the same rights, protections, and benefits are to be granted to registered domestic partners dissolving their domestic partnership as are granted to spouses dissolving their marriage. As explained, *ante*, the law of this state is that an individual with a reasonable, good faith belief in the validity of his or her marriage, even if that marriage is void or voidable, is entitled to protection as a putative spouse. (Fam. Code, § 2251, subd. (a).) Given the intended reach of the Domestic Partner Act, we conclude that a person with a reasonable, good faith belief in the validity of his or her registered domestic partnership is similarly entitled to protection as a putative registered domestic partner, even if the domestic partnership was not properly registered.

Here, the trial court erred in its conclusion that the putative spouse doctrine could only apply if Ellis and Arriaga had registered their domestic partnership. The whole point of the putative spouse doctrine is to protect those whose marriage was not or could not be properly formalized, or was void, voidable, or otherwise invalid. The Domestic Partner Act was intended by the Legislature to extend to registered domestic partners the legal rights and responsibilities held by married couples to the extent permitted by law. The putative spouse doctrine is not a right or obligation accorded by federal law, the California Constitution, or voter initiative, and therefore is not excluded from the rights granted and obligations imposed under the Domestic Partner Act. There is no sound reason under California statutory law to deprive domestic partners of the rights granted to registered domestic partners if they reasonably believed they were so registered.

Our conclusion is consistent with the California Supreme Court's analysis of the Domestic Partner Act in a different context. In *Koebke, supra*, 36 Cal.4th at page 831, our high court concluded the Unruh Civil Rights Act (Civ. Code, § 51 et seq.) prohibits discrimination based on marital status. The court also concluded registered domestic partners under the Domestic Partner Act "are the equivalent of spouses" for purposes of application of the Unruh Civil Rights Act. (*Koebke, supra*, 36 Cal.4th at p. 831.) "To couples who meet the requirements of establishing a domestic partnership under the Domestic Partner Act and who have registered under that law, the Legislature has granted legal recognition comparable to marriage both procedurally and in terms of the substantive rights and obligations granted to and imposed upon the partners, which are supported by policy considerations similar to those that favor marriage. [Citation.]" (*Id.* at p. 845.) The court rejected the argument that because the Domestic Partner Act contains only one specific

antidiscrimination provision—Family Code section 297.5, subdivision (g), prohibiting discrimination by public agencies—the Legislature did not intend to ban discrimination against registered domestic partners in public accommodations: "No specific legislative declaration is required for this court to infer from the statements of legislative intent accompanying the Domestic Partner Act an intent that registered domestic partners should not be discriminated against in favor of married couples in public accommodations." (*Koebke, supra*, 36 Cal.4th at p. 849.)

Similarly, here, we are convinced that the legislative intent of the Domestic Partner Act is to apply the equitable putative spouse doctrine codified in Family Code section 2251 to persons with a reasonable, good faith belief in the validity of their registered domestic partnerships, enabling them to plead and prove they reasonably believed they were registered domestic partners.

Given our holding, we need not reach other issues urged by Ellis, namely, whether a contrary decision would violate federal or state constitutional guarantees of equal protection, or that we should equitably read into existing statutes the language necessary to equalize the statuses of married couples and registered domestic partners.

## IV.

### Velez v. Smith (2006) 142 Cal.App.4th 1154 Is Inapposite. To the Extent It Is Inconsistent With Our Holding, We Disagree With That Decision.

In *Velez v. Smith* (2006) 142 Cal.App.4th 1154, 1159 [48 Cal.Rptr.3d 642] (*Velez*), Lena Velez and Krista Smith registered as domestic partners with the City and County of San Francisco in 1994. In 1996, they again registered as domestic partners in San Francisco when they attended a public commitment ceremony. (*Ibid.*) Velez and Smith never registered or attempted to register their domestic partnership with the California Secretary of State. (*Id.* at p. 1167.) In November 2004, before the Domestic Partner Act went into effect, Smith filed a notice ending the domestic partnership with the San Francisco County Clerk and mailed a copy to Velez. (*Velez, supra*, 142 Cal.App.4th at p. 1159.) Velez filed a petition for dissolution of the domestic partnership in December 2004, and filed an amended petition in January 2005, after the Domestic Partner Act became effective, seeking a division of the domestic partnership's assets and a termination of the court's jurisdiction

to award support to Smith. (*Velez, supra*, 142 Cal.App.4th at p. 1159.) The trial court found it lacked jurisdiction over the case, and granted Smith's motion to strike the amended petition. (*Id.* at p. 1160.)

The appellate court agreed there was no domestic partnership to be dissolved, and therefore affirmed the trial court's order striking Velez's amended petition. The appellate court first concluded registration of a domestic partnership with the Secretary of State, as specified in the Family Code, was a prerequisite to enlisting the assistance of the court in dissolving that domestic partnership. (*Velez, supra*, 142 Cal.App.4th at p. 1167.) Second, because Smith had filed and served a notice ending the domestic partnership before the effective date of the Domestic Partner Act, she had effectively terminated any domestic relationship that had existed before the rights Velez sought to enforce came into existence. (*Velez, supra*, 142 Cal.App.4th at pp. 1167–1169.) "Absent a valid domestic partnership created in accordance with statutory requirements, the court had no jurisdiction to act upon [Velez]'s dissolution petition." (*Id.* at p. 1169.)

The appellate court also concluded the Domestic Partner Act could not be applied retroactively in that case. "[T]he simple fact is that retroactive application of the Domestic Partner Act is of no benefit to [Velez] because her domestic partnership with [Smith] was *never* registered with the Secretary of State as the law demands, either before or after the new law became operative. [Velez] has no vested rights to proceed with dissolution of a domestic partnership that was not properly registered with the Secretary of State before the effective date of the statute. [Velez] may have vested contractual or other rights associated with her relationship with [Smith], but none that are granted by the Domestic Partner Act." (*Velez, supra*, 142 Cal.App.4th at p. 1170.)

Finally, as relevant to the present appeal, the appellate court rejected Velez's argument that she had standing to proceed with the dissolution proceeding as a putative domestic partner. The court noted that, while the Domestic Partner Act "seeks to create 'substantial legal equality between domestic partners and spouses,' " it does not purport to treat registered domestic partners the same as spouses in all respects. (*Velez, supra*, 142 Cal.App.4th at p. 1173, citing *Koebke, supra*, 36 Cal.4th at p. 845.) The appellate court concluded that because the Domestic Partner Act did not specifically create a putative domestic partnership, and did not amend Family Code section 2251 to include domestic partners within its reach, there is no such thing as a putative domestic partnership. (*Velez, supra*, 142 Cal.App.4th at p. 1174.)

*Velez, supra,* 142 Cal.App.4th 1154 is limited to its specific facts, where the parties involved never registered or even attempted to register their domestic partnership with the California Secretary of State, and where one of the parties filed and served a notice ending the domestic partnership before the provisions of the Domestic Partner Act went into effect. Here, by contrast, Ellis declared that after the Domestic Partner Act became effective, he and Arriaga signed and had notarized the paperwork necessary to register their domestic partnership with the California Secretary of State. Ellis also declared he believed the paperwork had been duly filed, and the partnership had therefore been fully and properly registered. In his amicus curiae brief filed in the present case, the Attorney General explains he is "unpersuaded" by *Velez,* because the "requisite good-faith-but-mistaken belief was manifestly unavailable as a basis for the exercise of equity, inasmuch as the partners evidently had never even attempted to register under the [Domestic Partner] Act."[2]

To the extent *Velez* is inconsistent with our conclusions, we respectfully disagree with its conclusion regarding putative domestic partnerships. The court in *Velez* stated that, if the Legislature had intended the putative spouse doctrine to apply to registered domestic partnerships, it would have expressly said so. (*Velez, supra,* 142 Cal.App.4th at p. 1174.) As explained in detail *ante,* however, the Domestic Partner Act was specifically designed by the Legislature to make the rights and responsibilities of registered domestic partners as similar to the rights and responsibilities of married couples as permissible under California law, without actually recognizing a right of gay and lesbian couples to marry. The Domestic Partner Act marked a sea change in the manner by which rights were extended by law to registered domestic partners.

The court in *Velez* focused heavily on the Domestic Partner Act's refusal to permit registered domestic partners to file joint state income tax returns, as well as the Domestic Partner Act's express statement that registered domestic partners were not entitled to many benefits under federal law. (*Velez, supra,* 142 Cal.App.4th at p. 1173.) Those statutory provisions were removed by later legislation, which became effective after *Velez* was filed. (Stats. 2006, ch. 802, § 2.) The court also considered differences in the procedures for forming marriages versus registered domestic partnerships; for example, persons under age 18 who wish to marry may do so with the consent of their

---

[2] In his amicus curiae brief, the Attorney General does not take a position on whether the putative spouse doctrine should be recognized under the Domestic Partner Act. Instead, the Attorney General argues this court should recognize a putative registered domestic partnership doctrine in the exercise of our equitable powers. The Attorney General's criticism of the *Velez* case is made in this context.

parents, while no similar provision applies to persons under age 18 wishing to register their domestic partnership. (*Velez, supra,* 142 Cal.App.4th at p. 1173.)

However, these procedural differences cannot overcome the Legislature's express intent in the Domestic Partner Act "to help California move closer to fulfilling the promises of inalienable rights, liberty, and equality contained in Sections 1 and 7 of Article 1 of the California Constitution by providing all caring and committed couples, regardless of their gender or sexual orientation, the opportunity to obtain essential rights, protections, and benefits and to assume corresponding responsibilities, obligations, and duties and to further the state's interests in promoting stable and lasting family relationships, and protecting Californians from the economic and social consequences of abandonment, separation, the death of loved ones, and other life crises." (Stats. 2003, ch. 421, § 1, subd. (a).) The Legislature has mandated that the Domestic Partner "[A]ct shall be construed liberally in order to secure to eligible couples who register as domestic partners the full range of legal rights, protections and benefits, as well as all of the responsibilities, obligations, and duties to each other, to their children, to third parties and to the state, as the laws of California extend to and impose upon spouses." (Stats. 2003, ch. 421, § 15.)

Finally, perhaps in part because of its holding that the Domestic Partner Act could not be applied retroactively, the court in *Velez, supra,* 142 Cal.App.4th 1154 did not consider or analyze Family Code section 299, subdivision (d), which provides: "The superior courts shall have jurisdiction over all proceedings relating to the dissolution of domestic partnerships, nullity of domestic partnerships, and legal separation of partners in a domestic partnership. *The dissolution of a domestic partnership, nullity of a domestic partnership, and legal separation of partners in a domestic partnership shall follow the same procedures, and the partners shall possess the same rights, protections, and benefits, and be subject to the same responsibilities, obligations, and duties, as apply to the dissolution of marriage, nullity of marriage, and legal separation of spouses in a marriage, respectively . . . .*" (Italics added.) If the dissolution of a registered domestic partnership is to follow the same procedures, and the "partners" involved are to have the same rights as the parties in a dissolution of marriage proceeding, then how can the equitable putative spouse doctrine not be included among the rights of a domestic partner who had a reasonable, good faith belief he or she had complied with the registration requirements imposed by the State of California? To give effect to the statute, Ellis must have the right to plead and prove his case.

### DISPOSITION

The judgment is reversed. Because respondent did not oppose the appeal, both sides shall bear their own costs on appeal.

Aronson, Acting P. J., and Ikola, J., concurred.