[No. H033001. Sixth Dist. Nov. 25, 2009.]

In re the Marriage of PABLO and PETRA TEJEDA.
PABLO TEJEDA, Respondent, v.
PETRA TEJEDA, Appellant.

**COUNSEL**

Baskin & Grant, Caleb S. Baskin and Heidi Simonson for Appellant.

Dolly Ares for Respondent.

OPINION

**McADAMS, J.**—This case requires us to construe Family Code section 2251.[1] Subject to the requirements of that provision, a marriage that is invalid due to a legal infirmity may be recognized as a putative marriage. Property acquired during a putative marriage (quasi-marital property) is divided as if it were community property.

In this case, the parties' marriage was invalid because respondent already had a wife when he married appellant. The trial court declared appellant a putative spouse. She appeals the judgment of nullity, challenging the determination that property acquired in her name during the union is quasi-marital property.

■ Applying the unambiguous language of section 2251, we conclude that the parties' union is a putative marriage and that the property acquired during that union is quasi-marital property subject to division as community property. We therefore affirm the judgment.

## FACTUAL BACKGROUND

In 1973, appellant Petra Tejeda (Petra) and respondent Pablo Tejeda (Pablo) were married in Las Vegas. At the time of the marriage ceremony, and unbeknownst to Petra, Pablo was married to Margarita Rivera Tejeda (Margarita). In 1975, Pablo petitioned to dissolve his marriage to Margarita, and a judgment of dissolution was entered the following year. In 1988, Pablo and Petra participated in a marriage ceremony in a Mexican church, unaccompanied by any civil formalities.

The parties' union lasted more than 30 years. During this time, Petra and Pablo had five children together. Petra began acquiring real property in 1994, taking title in her name, together with other relatives, but not with Pablo.

---

[1] Unspecified statutory references are to the Family Code.

Section 2251 provides in pertinent part as follows: "If a determination is made that a marriage is void or voidable and the court finds that either party or both parties believed in good faith that the marriage was valid, the court shall: [¶] (1) Declare the party or parties to have the status of a putative spouse. [¶] (2) If the division of property is in issue, divide, in accordance with Division 7 (commencing with Section 2500), that property acquired during the union which would have been community property or quasi-community property if the union had not been void or voidable. [¶] This property is known as 'quasi-marital property.' " (§ 2251, subd. (a).)

## PROCEDURAL HISTORY

In March 2006, Pablo filed an action to end his union with Petra, petitioning for dissolution in San Benito County. In a response filed in May 2006, Petra likewise requested dissolution of marriage. Thereafter, she amended her response to seek a judgment of nullity of marriage. In October 2007, after the action had been transferred to Santa Cruz County, Petra filed another amended response. As before, Petra requested a judgment of nullity. Petra also requested that all property in her possession be confirmed as her separate property.

In January 2008, the court conducted an evidentiary hearing to determine the validity of the marriage.

Prior to the hearing, the attorneys for both parties submitted written briefing, which included both exhibits and arguments. Petra argued that the union was bigamous and thus void under section 2201. She asserted that Pablo could not demonstrate the requisite reasonable good faith belief in the validity of the marriage required for putative spouse status under section 2251. Petra clarified that she was not seeking putative spouse status for herself. In his trial brief, Pablo asserted his belief that he and Petra were married. In any event, Pablo maintained, "fault" is irrelevant in a putative marriage.

At the hearing, only Petra testified.[2] At the time of her 1973 Las Vegas wedding, Petra stated, she did not know that Pablo was still married to Margarita. Pablo told Petra that he was divorced. Petra did not discover the truth until 2006. Up until then, Petra testified, "I thought I was married."

Following Petra's testimony, the trial court made an oral finding "that the marriage is either void or voidable because Mr. Tejeda was already married." The court also found that "at all times, Mrs. Tejeda believe[d] that she was married to someone who at the time of their marriage ceremony was single." That belief, the court said, was reaffirmed "by her actions over some period of time" such as filing joint tax returns, confirming her marital status for immigration purposes, taking Pablo's name, and using "medical benefits under his insurance, social security benefits under his name."

Given these factual findings, the court concluded, the matter was governed by section 2251, which required the court to "declare the party or parties to have the status of a putative spouse." The property thus was quasi-marital

---

[2] After hearing Petra's testimony, the trial court found it unnecessary to receive further evidence in order to apply section 2251 to the parties' union.

property. The court did not divide the property, observing that there might be defenses to the presumption of equal division, or tracing issues, or other questions concerning characterization.

In June 2008, the court entered a judgment of nullity, which incorporated its earlier determinations. The court found that since "either party (here, specifically Petra Tejeda) or both parties believed in good faith that the marriage was valid," the court was statutorily required to "declare the party or parties to have a status of putative spouse." Under "the mandatory language" of section 2251, the court stated, it was "obligated to find that the property of the parties is quasi-marital . . . property."

This appeal ensued.[3]

## CONTENTIONS

Petra asserts that the "plain language" of section 2251 "is ambiguous, to the extent it is susceptible to the interpretation applied by the Trial Court." As a matter of legislative intent, she argues, the statute should "only be applied at the request of the putative (innocent) spouse."

Pablo disagrees, arguing that the statutory language "is clear: if either party or both parties have the status of a putative spouse, community property principles apply to the division of any quasi-marital property at issue."

## DISCUSSION

As a framework for our discussion, we begin by setting forth the legal principles that govern our analysis. We then apply them to this case.

I. *Legal Principles*

A. *Putative Marriages*

■ "Where a marriage is invalid due to some legal infirmity, an innocent party may be entitled to relief under the putative spouse doctrine." (*Estate of DePasse* (2002) 97 Cal.App.4th 92, 107 [118 Cal.Rptr.2d 143]; accord, *In re Marriage of Ramirez* (2008) 165 Cal.App.4th 751, 756 [81 Cal.Rptr.3d 180].)

1. *Legal Infirmity*

■ Invalid marriages include those that are void or voidable. (*In re Marriage of Vryonis* (1988) 202 Cal.App.3d 712, 718 [248 Cal.Rptr. 807].)

---

[3] Citing section 2025, the trial court had previously granted Petra's motion to certify the matter for an immediate appeal. We granted Petra's motion to appeal, made pursuant to California Rules of Court, rule 5.180(d).

Bigamy renders the later marriage either void or voidable, depending on the circumstances. (§ 2201, subd. (a).) One "may *never* legally remarry prior to dissolution of his or her existing marriage." (*In re Marriage of Campbell* (2006) 136 Cal.App.4th 502, 508 [38 Cal.Rptr.3d 908].)

 2. *Putative Spouse Doctrine*

■ "Under the equitable putative spouse doctrine, a person's reasonable, good faith belief that his or her marriage is valid entitles that person to the benefits of marriage, even if the marriage is not, in fact, valid." (*In re Domestic Partnership of Ellis & Arriaga* (2008) 162 Cal.App.4th 1000, 1003 [76 Cal.Rptr.3d 401].)

The putative spouse doctrine is "an equitable doctrine first recognized by the judiciary, and later codified by the Legislature." (*In re Domestic Partnership of Ellis & Arriaga, supra*, 162 Cal.App.4th at p. 1005.) "In 1969, the Legislature codified the putative spouse doctrine in Civil Code former section 4452" as part of the former Family Law Act. (*In re Domestic Partnership of Ellis & Arriaga, supra*, 162 Cal.App.4th at p. 1005.) "Prior to the enactment of the former Family Law Act, no statute granted rights to a putative spouse. The courts accordingly fashioned a variety of remedies by judicial decision." (*Marvin v. Marvin* (1976) 18 Cal.3d 660, 677 [134 Cal.Rptr. 815, 557 P.2d 106], fn. omitted.) Some "decisions affirmed the power of a court to employ equitable principles to achieve a fair division of property acquired during putative marriage." (*Id.* at p. 678.)

■ Codification "was not intended to narrow the application of the doctrine only to parties to a void or voidable marriage. Instead, the Legislature contemplated the continued protection of innocent parties who believe they were validly married." (*In re Marriage of Vryonis, supra*, 202 Cal.App.3d at p. 719; accord, *In re Domestic Partnership of Ellis & Arriaga, supra*, 162 Cal.App.4th at p. 1005; *Estate of DePasse, supra*, 97 Cal.App.4th at p. 107.)

The current version of the putative spouse doctrine is contained in section 2251, subdivision (a), which provides in relevant part: "If a determination is made that a marriage is void or voidable and the court finds that either party or both parties believed in good faith that the marriage was valid, the court shall: [¶] (1) Declare the party or parties to have the status of a putative spouse." The language of this provision is "almost identical" to that of its predecessor, Civil Code former section 4452, the original provision in the Family Law Act. (*In re Domestic Partnership of Ellis & Arriaga, supra*, 162 Cal.App.4th at p. 1005.)

### B. Quasi-marital Property

■ Quasi-marital property is "property acquired during the union which would have been community property or quasi-community property if the union had not been void or voidable." (§ 2251, subd. (a)(2); see *Estate of Leslie* (1984) 37 Cal.3d 186, 191, fn. 5 [207 Cal.Rptr. 561, 689 P.2d 133]; *Estate of Hafner* (1986) 184 Cal.App.3d 1371, 1384, fn. 12 [229 Cal.Rptr. 676].) "The theory of 'quasi-marital property' equates property rights acquired during a putative marriage with community property rights acquired during a legal marriage." (*Estate of Vargas* (1974) 36 Cal.App.3d 714, 717 [111 Cal.Rptr. 779].)

■ Upon declaration of putative spouse status, the court is required to divide the quasi-marital property as if it were community property. (§ 2251, subd. (a)(2); *Marvin v. Marvin, supra,* 18 Cal.3d at p. 677, fn. 13; *In re Marriage of Ramirez, supra,* 165 Cal.App.4th at p. 756.) Thus, "the share to which the putative spouse is entitled is the same share of the quasi-marital property as the spouse would receive as an actual and legal spouse if there had been a valid marriage, i.e., it shall be divided equally between the parties." (*Estate of Hafner, supra,* 184 Cal.App.3d at p. 1384; see § 2550.) "These principles were established by numerous judicial decisions, and were made a part of our positive law by the enactment, in 1969, of Civil Code section 4452, a part of the Family Law Act, effective January 1, 1970." (*Estate of Hafner,* at p. 1384.)

### C. Appellate Review

As both parties acknowledge, the issue presented here "is one of statutory construction that is subject to our independent review." (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83 [45 Cal.Rptr.3d 394, 137 P.3d 218].)

■ "In construing a statute, our fundamental task is to ascertain the Legislature's intent so as to effectuate the purpose of the statute." (*Smith v. Superior Court, supra,* 39 Cal.4th at p. 83.) "We begin with the language of the statute, giving the words their usual and ordinary meaning." (*Ibid.*) "The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) Thus, "every statute should be construed with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect." (*Moore v. Panish* (1982) 32 Cal.3d 535, 541 [186 Cal.Rptr. 475, 652 P.2d 32]; accord, *Mejia v. Reed* (2003) 31 Cal.4th 657, 663 [3 Cal.Rptr.3d 390, 74 P.3d 166].)

"If the terms of the statute are unambiguous, we presume the lawmakers meant what they said, and the plain meaning of the language governs." (*Estate of Griswold* (2001) 25 Cal.4th 904, 911 [108 Cal.Rptr.2d 165, 24 P.3d 1191].) As the California Supreme Court recently reaffirmed, "judicial construction of unambiguous statutes is appropriate only when literal interpretation would yield absurd results." (*Simmons v. Ghaderi* (2008) 44 Cal.4th 570, 583 [80 Cal.Rptr.3d 83, 187 P.3d 934].) Where the statutory language is clear, resort to extrinsic aids is neither necessary nor proper. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1119–1120 [81 Cal.Rptr.2d 471, 969 P.2d 564].)

## II. *Analysis*

As we now explain, our analysis begins and ends with an examination of the statutory language, construed in context and in light of the statutory purposes.

### A. *The Statutory Language*

The language of the governing statute is clear and unambiguous.

 Section 2251 requires two predicate findings: that the "marriage is void or voidable" and "that either party or both parties believed in good faith that the marriage was valid . . . ." (§ 2251, subd. (a).) If the predicate findings are made, "the court shall" do these two things: "(1) Declare the party or parties to have the status of a putative spouse" and (2) divide any quasi-marital property as if it were community property. (*Ibid.*)

For purposes of this provision, "shall" is mandatory. (§ 12; *Estate of DePasse, supra*, 97 Cal.App.4th at p. 102.)

#### 1. *Putative Spouse Determination*

 Upon a finding that the marriage is invalid, the statute requires the court to declare any party with the requisite good faith belief to be a putative spouse.

As Petra observes, "the status is not automatically applied to both parties, only those with a good faith belief in the validity of the marriage." In the words of one court: "The status of 'putative spouse' requires innocence or good faith belief." (*In re Marriage of Recknor* (1982) 138 Cal.App.3d 539, 544 [187 Cal.Rptr. 887]; see *Estate of Vargas, supra*, 36 Cal.App.3d at p. 717.)

■ What Petra fails to acknowledge, however, is that once either party is a putative spouse, the union is a *putative marriage*. "By definition, a putative marriage is a union in which at least one partner believes in good faith that a valid marriage exists. As in this case, the couple conducts themselves as husband and wife throughout the period of their union." (*Estate of Leslie, supra*, 37 Cal.3d at p. 197.) Thus, even where only one party has the requisite good faith belief in the validity of the marriage, thereby qualifying as the sole putative spouse, the court's declaration of his or her status operates as a declaration that the union itself is a putative marriage.

### 2. Property Division

The statute commands the court to divide the quasi-marital property as if it were community property, using these words: "If the division of property is in issue," the court shall "divide, in accordance with Division 7 (commencing with Section 2500), that property acquired during the union which would have been community property or quasi-community property if the union had not been void or voidable." (§ 2251, subd. (a)(2).) Division 7 governs the division of property; section 2550 generally requires the court to "divide the community estate of the parties equally."

■ Nothing in the language of section 2251's property division mandate suggests that it is limited to cases where both parties are putative spouses. To the contrary, read in combination with the preceding sentence—the grant of putative spouse status to "the party or parties"—it plainly compels division of the quasi-marital property regardless of whether both parties have been declared putative spouses. (§ 2251, subd. (a)(1).)

This reading is consistent with long-standing decisional law, which holds that "property acquired during the void or voidable union . . . is divided as community property would be divided upon the dissolution of a valid marriage." (*Estate of Hafner, supra*, 184 Cal.App.3d at p. 1384.) "There is no reason to believe that the Legislature . . . intended to change those principles." (*Ibid.*)

### B. The Statutory Context

■ We do not consider the words of the statute in isolation. Rather, we examine the statutory language "in context, keeping in mind the statutory purpose," and harmonizing the statute with related provisions. (*Dyna-Med, Inc. v. Fair Employment & Housing Com., supra*, 43 Cal.3d at p. 1387.) Petra urges us to do so here, claiming that related statutory law "supports the conclusion that the equity-based putative spouse doctrine codified in . . . § 2251 may only be applied to the benefit (and at the request) of the innocent spouse."

### 1. Related Provisions

Two relevant provisions are sections 2254 and 2255. Section 2254 permits an order for support, "if the party for whose benefit the order is made is found to be a putative spouse." Section 2255 provides that fees and costs in a nullity proceeding may be granted only to a party "found to be innocent of fraud or wrongdoing in inducing or entering into" a putative marriage.

These provisions support an inference that the Legislature intended to treat "guilty" and "innocent" parties to a putative marriage differently. In the words of one commentator, "the fact that the Legislature limited *support* and *attorney fee* rights to the 'good faith' (innocent) spouse . . . may be some indication it also intended only the putative spouse to be entitled to quasi-marital property rights." (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2009) ¶ 19:62, p. 19-20 (rev. # 1, 2007), some italics omitted, discussing §§ 2254, 2255.)

On the other hand, the opposite inference might be drawn by applying the maxim *expressio unius est exclusio alterius*: "The expression of some things in a statute necessarily means the exclusion of other things not expressed." (*Gikas v. Zolin* (1993) 6 Cal.4th 841, 852 [25 Cal.Rptr.2d 500, 863 P.2d 745]; see *Simmons v. Ghaderi, supra*, 44 Cal.4th at p. 583.) Here, the Legislature singled out the "innocent" party in providing for fees, and it likewise singled out the "putative spouse" in providing for support, but it did not limit quasi-marital property division to an innocent putative spouse, either explicitly or implicitly. In making this choice, we assume that the Legislature was aware of the substantial body of decisional law providing for equal division of quasi-marital property. (*Estate of Leslie, supra*, 37 Cal.3d at p. 196, fn. 10.)

### 2. Statutory Purpose

Disregarding guilt and innocence in property division also serves to support the purposes of the Family Law Act. "The main focus of the act was to eliminate the artificial fault standard." (*In re Marriage of Monti* (1982) 135 Cal.App.3d 50, 54 [185 Cal.Rptr. 72].) "The basic substantive change in the law" engendered by the act was "the elimination of fault or guilt as grounds for granting or denying divorce and for refusing alimony and making unequal division of community property." (*In re Marriage of McKim* (1972) 6 Cal.3d 673, 678 [100 Cal.Rptr. 140, 493 P.2d 868], fn. omitted.) "The equal division of community property was one of the ways 'of advancing [the act's] primary no-fault philosophy.' " (*In re Marriage of Cary* (1973) 34 Cal.App.3d 345, 351 [109 Cal.Rptr. 862].) The equal division of quasi-marital property likewise serves those purposes.

This reading of the statute, without regard to guilt or innocence, is bolstered by dicta from the California Supreme Court decision in *Marvin*, which states: "In a putative marriage the parties will arrange their economic affairs with the expectation that upon dissolution the property will be divided equally. If a 'guilty' putative spouse receives one-half of the property under [the statute], no expectation of the 'innocent' spouse has been frustrated." (*Marvin v. Marvin, supra*, 18 Cal.3d at pp. 680–681, fn. 18.)

### C. *Conclusion*

 Based on the plain language of the statute, read in context and with due regard for the purposes of the broader law of which it is a part, we conclude that the mandate of section 2251 must be applied, without regard to guilt or innocence, when the court makes the predicate findings that (1) the marriage is void or voidable, and (2) at least one party to the union maintained a good faith belief in the validity of the marriage.

### DISPOSITION

The June 2008 judgment of nullity is affirmed.

Bamattre-Manoukian, Acting P. J., and Duffy, J., concurred.