Filed 6/8/22

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re the Marriage of SAMIR ELALI and MAYSSA MARCHOUD. | |
| SAMIR ELALI,<br><br>         Respondent,<br><br>v.<br><br>MAYSSA MARCHOUD,<br><br>         Appellant. | E075103<br><br>(Super. Ct. Nos. FAMSS1404386<br> & FAMSS1509878)<br><br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Steven J. Singley and Teresa S. Bennett, Judges.  Affirmed.

Peirano & Associates, Cristian L. Peirano, Sean R. Bozarth and Tom N. Yacko, for Appellant.

Chung & Ignacio and Eric N. Chung, for Respondent.

1

I.

INTRODUCTION

While Mr. Samir Elali was married to Ms. Angeles Elali and resided with her in California, Samir married Ms. Mayssa Marchoud in Lebanon.[1] After Samir attempted to terminate the Lebanese marriage, Mayssa filed a petition in California for spousal support without dissolution against Samir. The trial court ruled the Lebanese marriage was bigamous and therefore void under Family Code section 2201, subdivision (a).[2]

Mayssa appeals from the judgment of nullity. She contends the trial court erred in relying on section 2201(a) in holding the Lebanese marriage was void. Mayssa also contends that the parties' pleading allegations admitting there was a marriage required the trial court to find the Lebanese marriage was valid. In addition, Mayssa contends there was insufficient evidence to overcome the presumption that the Lebanese marriage was valid. Mayssa further argues that a ruling that the Lebanese marriage was valid precluded a different judge from subsequently ruling the marriage was void.

---

[1] We will refer to the parties by their first names for clarity.

[2] Unless otherwise noted, all statutory references are to the Family Code. Subsequent citations to section 2201, subdivision (a) shall be cited herein as section 2201(a).

We reject Mayssa's contentions and conclude the trial court did not err in ruling the bigamous Lebanese marriage was void under section 2201(a). We therefore affirm the judgment of nullity.

II.

FACTS AND PROCEDURAL BACKGROUND

On August 7, 2014, Mayssa filed in the San Bernardino County Superior Court a petition entitled, "Petition for Spousal Support Without Dissolution of Marriage," under section 4303 (case no. FAMSS1404386). The petition requested spousal support when there was no pending case for marital dissolution or previous enforceable support order. Mayssa alleged she and Samir married on August 28, 2012, and there had been no judgment of nullity, legal separation, or dissolution of marriage entered. Mayssa further alleged that in May 2014, Samir abandoned her, had ceased cohabiting with her, and had not provided her with any support.

On August 8, 2014, Mayssa filed a request for order (RFO) for temporary spousal support, attorney's fees and costs, and a temporary emergency order against eviction. On August 19, 2014, Samir filed a responsive declaration objecting to Mayssa's RFO. Samir alleged the parties were not married but entered into a temporary marriage contract in Lebanon, and on June 10, 2014, Samir terminated the marriage contract under Muslim law. Samir further alleged that Mayssa was fully aware when she married him in Lebanon that he remained legally married to Angeles, whom he married in 1987, in California.

3

During the trial of Mayssa's RFO for temporary support, the court addressed the issue of awarding spousal support when no dissolution of marriage was requested. The parties disagreed as to whether they were validly married in Lebanon and divorced. Over the course of eight months, beginning on September 26, 2014, the court heard evidence on the matter. Judge Bennett took the matter under submission on May 12, 2015, and on July 2, 2015, issued a signed ruling, entitled "Tentative Ruling On Submitted Matter." Judge Bennett found, based on the evidence presented, including the parties' testimony and testimony by experts on Muslim law, that the Lebanese marriage was valid.

Judge Bennett further found that Mayssa did not receive any notice of Samir's actions attempting to obtain a divorce. Both Mayssa and Samir were domiciled in California and entitled to state and federal due process rights. Samir was a United States citizen, had no residency in Lebanon, and had not lived in Lebanon for over thirty years. Mayssa had not been in Lebanon for over one year and had no notice of Samir's actions attempting to obtain a divorce in Lebanon. Judge Bennett thus concluded in her July 2, 2015 ruling that, "at the time [Mayssa] filed her Petition for Spousal Support Without Dissolution of Marriage, there was no valid judgment of dissolution of marriage entered since the termination of the marriage contract was done without notice to [Mayssa] and an opportunity to be heard in violation of due process."

4

Litigation resumed on Mayssa's Petition for Spousal Support without Dissolution of Marriage. Because the court previously ruled the Lebanese marriage was valid, on December 16, 2015, Samir filed a petition to nullify the Lebanese marriage based on bigamy, fraud, and force. Samir requested in his petition that the court find the marriage void or voidable and terminate the court's ability to award Mayssa spousal support. The court ordered Samir's petition (FAMSS1509878[3]) consolidated with Mayssa's spousal support petition and RFO (FAMSS1404386). The consolidated petitions for spousal support and to nullify the Lebanese marriage were set for trial.

On February 1, 2016, the court awarded Mayssa monthly temporary spousal support in the amount of $1,309 and granted Samir's request to bifurcate his request to nullify the marriage from trial of "financials." The court ordered that at the upcoming trial in May 2016, it would resolve only the issue of whether to nullify the Lebanese marriage.

On February 24, 2016, Samir filed an RFO to modify temporary spousal support based on Samir and Angeles stipulating on February 9, 2016, that Samir would pay Angeles monthly child and spousal support.[4] Samir filed a petition for dissolution of his marriage with Angeles in 2013. On April 14, 2016, the court heard and took under submission Samir's RFO to modify support. The court also granted leave for Samir to change his petition to nullify the Lebanese marriage to a petition for dissolution of the

---

[3] The court designated case no. FAMSS1509878 as the lead case.

[4] The stipulation was filed under case no. FAMRS1303184.

5

marriage. That same day, Samir filed his amended petition for dissolution, alleging that the parties were married. Samir requested a divorce based on irreconcilable differences and termination of the court's ability to award support.

On May 19, 2016, the court ruled on Samir's RFO for modification of temporary spousal support. The court ordered that upon Samir providing the court with proof he was paying child support to Angeles pursuant to her and Samir's support stipulation, the temporary spousal support awarded to Mayssa would be reduced.

On August 23, 2016, the parties resolved their dispute over spousal support by executing an "Agreement for Judgment," agreeing to Samir paying Mayssa a lump sum of $7,195 for spousal support by September 23, 2016, with the parties waiving all future spousal support. The court approved the stipulation and ordered it incorporated into a court order.

During a hearing following the scheduled status conference on July 19, 2017, Judge Bennett stated that "the Court determined that there was a valid marriage between [Mayssa] and [Samir], notwithstanding that [Samir] was married to [Angeles] . . . . That ruling then precipitated [Samir] to amend his petition for a nullity and request dissolution of marriage. . . . [T]hen there were still issues in the dissolution matter concerning spousal support." Judge Bennett added that once the parties reached an agreement on spousal support, she thought she was done with the case, but then Samir raised an issue regarding nullity of the marriage and the matter was set for a status conference.

At the status conference on July 19, 2017, Judge Bennett told the parties she could no longer keep the case because of her heavy caseload. Therefore the case was reassigned to Judge Singley.

On March 13, 2019, Judge Singley commenced the trial on Samir's petition for dissolution. Judge Singley sua sponte ordered Samir's petition for dissolution amended to allege a request for nullification of the Lebanese marriage, rather than dissolution, based on evidence of bigamy. The court continued the trial of Samir's amended petition for nullity to March 20, 2019. During the trial on March 20, 2019, Samir's attorney noted that after his petition for a nullity was filed, Judge Bennett bifurcated the issue of nullity because it was a threshold issue. Then after Samir amended his nullity petition to be a petition for dissolution, trial of the issue of nullity went off calendar.

Judge Singley responded, "what I find myself wondering in all of this is what am I supposed to do with the fact that if the evidence supports the reality if the marriage is void or violating the Family Code Section that deals with bigamy, am I supposed to ignore that?" Mayssa's attorney informed the court that "the only thing before the Court today is status, community property, and attorney fees and costs. Spousal support has been adjudicated and it's done."

Judge Singley inquired, "How do I get around 2201 of the Family Code, though, that says a subsequent marriage contracted by a person during the life of his or her former spouse with a person other than the former spouse is illegal and void unless there's an exception[] that [doesn't] apply here[?]" Judge Singley acknowledged that Judge

7

Bennett tried the issue of whether Samir terminated his Lebanese marriage and ruled he did not because there was no due process. Judge Bennett therefore ruled the Lebanese marriage remained a valid marriage.

Judge Singley added, "But that doesn't necessarily mean that once you find a valid marriage that it's not void." Mayssa's attorney stated he agreed but said he previously thought res judicata precluded Mayssa from challenging the court's previous ruling the marriage was valid. Mayssa's counsel, however, believed Judge Singley could make the determination of whether the marriage was void, and then there would be no need to rule on dissolution or address the community property issue. Counsel stated he had evidence proving the first marriage between Samir and Angeles and that the marriage was never judicially dissolved in this country.

Samir's attorney argued that because there was no evidence his first marriage was valid, the court must presume the subsequent Lebanese marriage was valid. In addition, both parties stated in their pleadings that the Lebanese marriage was valid. Judge Singley responded that he could allow the petition for dissolution to be a petition for a nullity, to conform with the evidence. Judge Singley added, "I don't know how I can stick my head in the sand and say, oh, there's two marriages. Let's just deal with the second marriage and treat the property issues when—if, in fact, he is validly married to somebody else prior to marrying [Mayssa]. I would have to completely ignore that. And it just seems nonsensical to me to ignore that." Judge Singley stated, "I do agree that [Judge Bennett] ruled that the marriage between these two parties is valid, but there's never been a

8

judicial determination as to . . . if that is the case, then does that make the marriage void[?]"

Judge Singley ended the discussion, after hearing argument, by stating: "Let me propose the following, because we started trial down Path A. We won't finish Path A, but what I propose we do is—I have enough proof before me at this point that I have some concerns about the statutory implication of 2201. So my proposal is we finish evidence on the path that we have already started, and I'm going to bring you folks back on another date to talk about the other issue, on my own motion, as to whether or not— it's going to be kind of an either/or. Either I'm going to declare the marriage void under 2201 or not. And if not, then I'm going to render a decision on the dissolution petition that we have already taken evidence on and we'll finish up today. But I don't think I can simply close the door to that and ignore it and render a decision on the dissolution without at least addressing the statutory issue of 2201." The court permitted the parties to conduct additional discovery and file briefing on the issue. Judge Singley set the matter for an evidentiary law and motion hearing on May 2, 2019, on the issue of whether the Lebanese marriage was bigamous and thus void under section 2201(a).

At the hearing on May 2, 2019, Judge Singley heard oral argument and reviewed Judge Bennett's ruling on July 2, 2015, vacating the trial on the bifurcated issue of whether the Lebanese marriage was a nullity. Judge Singley considered only the issue of bigamy under section 2201(a), and permitted the parties to present evidence on the issue

9

of bigamy. The issue of whether Mayssa was a putative spouse was reserved for future consideration in the event the court found there was bigamy.

During the hearing, Judge Singley stated that Judge Bennett's ruling that the Lebanese marriage was valid did not address the application of section 2201(a). Judge Singley explained that Judge Bennett found the Lebanese marriage was valid under Lebanese law because bigamy was permissible, unlike under California law. However, Judge Bennett also found that Samir's efforts to terminate the marriage in Lebanon were ineffective because Samir did not comply with California's due process standards. Judge Singley concluded Judge Bennett never considered or ruled on application of section 2201(a) because the parties agreed to amend the petition for nullity to a petition for dissolution of the marriage, resulting in Judge Bennett vacating the trial date. Judge Singley stated that Judge Bennett "did not take it to the next step that talks about the fact that if, in fact, [Samir] was previously married, what is the effect of that valid Lebanese marriage? Is it void or is it not?" Judge Singley directed Samir to file an amended petition seeking nullity, which may not have been done.

At the end of the hearing on May 2, 2019, the parties and court agreed to allow Mayssa to amend the pleadings to add allegations that Mayssa was a putative spouse. The parties and court also agreed to continue the trial on the issues of the validity of Samir's first marriage with Angeles and whether Mayssa was a putative spouse.

10

On August 21, 2019, Judge Singley tried the issue of bigamy under section 2201(a), and permitted the parties to present evidence on bigamy and the validity of Samir and Angeles's marriage. The issue of whether Mayssa was a putative spouse was reserved for future consideration in the event the court found there was bigamy and the marriage was thus void. After considering the evidence and hearing oral argument, Judge Singley stated that Judge Bennett ruled that the Lebanese marriage was valid under Lebanese law but did not take the additional step of ruling on whether it was in violation of section 2201. This was why he sua sponte raised the issue of whether section 2201(a) applied. Judge Singley found that Samir met his burden of proving his marriage with Angeles was a valid marriage existing when he married Mayssa in Lebanon. Judge Singley therefore concluded that, although the Lebanese marriage was valid under Lebanese law, it ran "afoul of 2201" and was thus "void in violation of 2201." Judge Singley added that "once I declare it void, the law is if either party had a good faith belief in the validity of the marriage, then I could declare that person a putative spouse."

The court asked Samir's attorney if he wanted the court to issue a final order so that Samir could immediately file a writ petition or appeal the court's ruling, or whether Samir preferred that the court proceed with trying the putative spouse issue. Samir's attorney requested the latter option because, if the court found there was a putative spouse, there would be no need to appeal the ruling that the Lebanese marriage was void. Judge Singley agreed with this approach. The court tried the putative spouse issue and on November 18, 2019, issued a ruling finding that under section 2251, Mayssa was not a

11

putative spouse because she did not have a good faith belief that her marriage to Samir was valid in California. The court therefore confirmed its previous finding on August 21, 2019, that the Lebanese marriage was void in violation of section 2201.

On January 24, 2020, the trial court entered a judgment of nullity on the ground of bigamy under section 2201. The court declared the marriage void and found that Mayssa was not the putative spouse of Samir. Mayssa filed a notice of appeal of the judgment of nullity.

III.

STANDARD OF REVIEW

We review de novo questions of law and mixed questions of law and fact that are primarily legal. (*Mercury Ins. Co. v. Lara* (2019) 35 Cal.App.5th 82, 97.) Where the material facts are undisputed and application of California and Lebanese law to the facts presents pure questions of law, we review the matter de novo. (*In re Marriage of Seaton* (2011) 200 Cal.App.4th 800, 806 (*Seaton*).)

The issue of whether the trial court properly applied section 2201(a) to the parties' Lebanese marriage is subject to our independent review. (*In re Marriage of Tejada* (2009) 179 Cal.App.4th 973, 981 (*Tejada*).) "'In construing a statute, our fundamental task is to ascertain the Legislature's intent so as to effectuate the purpose of the statute.' [Citation.] 'We begin with the language of the statute, giving the words their usual and ordinary meaning.' [Citation.] 'The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the

12

same subject must be harmonized, both internally and with each other, to the extent possible.' [Citation.] Thus, 'every statute should be construed with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect.' [Citations.]" (*Ibid.*)

## IV.

## ISSUE PRECLUSION

Mayssa contends Judge Singley's ruling that the Lebanese marriage is void contradicted Judge Bennett's ruling that the marriage was valid, and thus violated the maxim that "[g]enerally, one trial court judge may not reconsider and overrule an interim ruling of another trial judge." (*In re Marriage of Oliverez* (2015) 238 Cal.App.4th 1242, 1248.) "This principle is founded on the inherent difference between a judge and a court and is designed to ensure the orderly administration of justice. 'If the rule were otherwise, it would be only a matter of days until we would have a rule of man rather than a rule of law. To affirm the action taken in this case would lead directly to forum shopping, since if one judge should deny relief, defendants would try another and another judge until finally they found one who would grant what they were seeking. Such a procedure would instantly breed lack of confidence in the integrity of the courts.' [Citation.]" (*In re Alberto* (2002) 102 Cal.App.4th 421, 427; accord, *In re Marriage of Oliverez*, *supra*, at p. 1248.) "For one superior court judge, no matter how well intended, even if correct as a matter of law, to nullify a duly made, erroneous ruling of another superior court judge places the second judge in the role of a one-judge appellate court."

13

(*In re Alberto*, *supra*, at p. 427.)

Although there are narrow exceptions to this general rule, none of them apply here. The exceptions include unavailability of the judge who made the initial ruling to decide a reconsideration motion; the facts have changed or the judge has considered further evidence and law; the record shows that the initial decision was based on inadvertence, mistake, or fraud. (*In re Marriage of Oliverez*, *supra*, 238 Cal.App.4th at pp. 1248-1249.) Mere disagreement with the prior trial judge's ruling is insufficient to overturn that ruling. (*Id.* at p. 1249.)

Mayssa also argues Judge Singley's ruling violated the doctrine of issue preclusion (also known as collateral estoppel) because Judge Bennett previously decided the issue. "Collateral estoppel, or issue preclusion, 'precludes relitigation of issues argued and decided in prior proceedings.' [Citation.]" (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896-897, fn. omitted.)

Under either the principle that one judge cannot overturn an interim ruling of another judge, or under the doctrine of issue preclusion, Judge Singley's ruling that the Lebanese marriage was void was proper. It is undisputed for purposes of this appeal that Samir's marriage to Mayssa was a valid marriage under the law of Lebanon, where the marriage occurred. (§ 308.) Judge Bennett tried the issue and on July 2, 2015, found the marriage was valid under Lebanese law. Judge Bennett, however, did not consider the issue of whether the marriage was a void bigamous marriage under section 2201(a). Before she had an opportunity to do so, the parties stipulated to change the petition from

14

a request to nullify the marriage based on bigamy, to a petition for dissolution of the Lebanese marriage. The matter was then continued for further proceedings and reassigned to Judge Singley.

Judge Singley thereafter clearly stated when ruling the Lebanese marriage was void, that he was not rejecting, contradicting, or reversing Judge Bennett's ruling that the Lebanese marriage was valid under Lebanese law. The record shows that during the trial on March 20, 2019, Judge Singley stated he agreed with Judge Bennett's previous ruling on July 2, 2015, that the Lebanese marriage was valid under the law of the jurisdiction where the marriage occurred. (§ 308.) He added, "But that doesn't necessarily mean that once you find a valid marriage that it's not void."

Judge Singley further stated, "I do agree that [Judge Bennett] ruled that the marriage between these two parties is valid, but there's never been a judicial determination as to . . . if that is the case, then does that make the marriage void[?]" Judge Singley noted that Judge Bennett did not consider or decide the issue of whether the Lebanese marriage was void under section 2201(a) as a bigamous marriage. He therefore continued the matter to allow the parties to litigate the issue.

After Judge Singley tried the issue on August 21, 2019, he ruled that the Lebanese marriage was void under section 2201(a). The ruling does not violate the doctrine of issue preclusion or prohibition against one judge reconsidering the ruling of another judge, because there was no previous ruling on the issue. Judge Bennett only tried and

15

decided the issue of whether the Lebanese marriage was valid under Lebanese law. She did not decide whether it was a void bigamous marriage under section 2201(a).

V.

THE PARTIES' PLEADING ALLEGATIONS

ADMITTING MARRIAGE

Mayssa argues that Judge Singley erred in ruling that the Lebanese marriage was void because she and Samir both admitted in their pleadings, "We are married." Mayssa therefore asserts the validity of their marriage was not at issue and the court's findings contradicting the parties' judicial admissions that they were married was error.

Mayssa cites *Valerio v. Andrew Youngquist Construction* (2002) 103 Cal.App.4th 1264 (*Valerio*), in support of this proposition. The court in *Valerio* explained that "[t]he admission of fact in a pleading is a 'judicial admission.' Witkin describes the effect of such an admission: 'An admission in the pleadings is not treated procedurally as evidence; i.e., the pleading need not (and should not) be offered in evidence, but may be commented on in argument and relied on as part of the case. And it is fundamentally different from evidence: It is a *waiver of proof* of a fact by conceding its truth, and it has the effect of removing the matter from the issues. Under the doctrine of "conclusiveness of pleadings," a pleader is bound by well pleaded material allegations or by failure to deny well pleaded material allegations. [Citations.]' (4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 413, pp. 510-511.)" (*Valerio*, *supra*, 103 Cal.App.4th at p. 1271.)

16

The *Valerio* court further stated that, "'"When a trial is had by the Court without a jury, a fact admitted by the pleadings should be treated as 'found.' . . . If the court does find adversely to the admission, such finding should be disregarded in determining the question whether the proper conclusion of law was drawn from the facts found and admitted by the pleadings. . . . In such case the facts alleged must be assumed to exist. Any finding adverse to the admitted facts drops from the record, and any legal conclusion which is not upheld by the admitted facts is erroneous." [Citations.]' [Citation.]" (*Valerio*, *supra*, 103 Cal.App.4th at p. 1271.) "[A] judicial admission is ordinarily *a factual allegation by one party that is admitted by the opposing party*. The factual allegation is removed from the issues in the litigation because the parties *agree* as to its truth." (*Barsegian v. Kessler & Kessler* (2013) 215 Cal.App.4th 446, 452.)

In the instant appeal, there is no dispute over the material facts underlying the determination the Lebanese marriage was valid under Lebanese law. Nor are Judges Bennett and Singley's findings that the marriage is valid under Lebanese law at issue here. Rather, as discussed above, the issue is whether Judge Singley erred as a matter of law in ruling that the Lebanese marriage was void under section 2201(a). This is a legal issue, not a factual issue alleged in the pleadings. Therefore, regardless of the parties' allegations that they were married, Judge Singley properly ruled the Lebanese marriage was void under section 2201(a).

17

In addition, the trial court had the authority to allow the parties to amend the pleadings based on evidence presented at trial. (*Barsegian v. Kessler & Kessler*, *supra*, 215 Cal.App.4th at p. 452.) "A judicial admission in a pleading is not set in stone, however, because '[t]he trial judge . . . has discretion to relieve a party from the effects of a judicial admission by permitting amendment of a pleading[.]' (4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 454, p. 587.) In addition, in certain contexts a party may be permitted to introduce evidence contradicting the party's own allegations even in the absence of an amendment." (*Id.* at p. 452, fn. 2.)

While Judge Singley was trying the parties' petitions, evidence was presented supporting a finding of bigamy, which resulted in Judge Singley continuing the trial to allow the parties to conduct additional discovery, present supplemental briefing, and present additional evidence and argument on the issue of whether the Lebanese marriage was void under section 2201(a). The evidence presented on the issue was sufficient to support amending the pleadings to conform to the evidence that the Lebanese marriage was void under section 2201(a).

Mayssa argues that the record does not show that the pleadings were properly amended to allege a request to nullify the Lebanese marriage, even though the trial court suggested that Samir do so. Even assuming the pleadings were not amended, Mayssa has not demonstrated she raised the objection in the trial court and therefore forfeited the objection on appeal.

18

"[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court. [Citation.] The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected. [Citation.]" (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.) "In *In re S.B.*, the California Supreme Court noted that 'the loss of the right to challenge a ruling on appeal because of the failure to object in the trial court . . . is [a] "forfeiture," because a person who fails to preserve a claim forfeits that claim.'" (*Hacker v. Homeward Residential, Inc.* (2018) 26 Cal.App.5th 270, 281, fn. 10, quoting *In re S.B.*, s*upra*, at p. 1293, fn. 2.) "[T]he appellate court's discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue." (*In re S.B.*, *supra*, at p. 1293.) The instant case is not one of those rare instances warranting excusing Mayssa's failure to object to the pleadings not being amended to conform to the evidence and issues tried.

We also conclude the parties' pleading allegations that they were married did not preclude the court from ruling that their marriage was void under section 2201(a).

VI.

APPLICATION OF CALIFORNIA LAW

TO A FOREIGN BIGAMOUS MARRIAGE

Mayssa contends the trial court erred in relying on California law when ruling the Lebanese marriage was void under section 2201(a). Mayssa argues that under section 308, the validity of a marriage is tested under the law of the place where it occurs. She

19

asserts that because the bigamous Lebanese marriage was valid under Lebanese law, the trial court erred in ruling it was void under California law.  (*Seaton*, *supra*, 200 Cal.App.4th at p. 807; § 308.)

Under section 308, "[a] marriage contracted outside this state that would be valid by laws of the jurisdiction in which the marriage was contracted is valid in California." Therefore Lebanese law applied, not California law, to determining the validity of the Lebanese marriage.  Mayssa argues that although Samir had two simultaneous marriages, the second marriage in Lebanon was valid because Lebanese law permits bigamy.

Even though Lebanese law applied under section 308 to the determination of whether the Lebanese marriage was valid, this did not foreclose the court from applying California law when determining whether the marriage was void as bigamous under section 2201(a).  In support of this proposition, Samir cites *McDonald v. McDonald* (1936) 6 Cal.2d 457 (*McDonald*), *Brandt v. Brandt* (1939) 32 Cal.App.2d 99, *Tejada*, *supra*, 179 Cal.App.4th 973, and *Seaton*, *supra*, 200 Cal.App.4th 800.  Mayssa argues these cases are distinguishable and do not support application of section 2201(a) to the valid Lebanese marriage.  Although we are not aware of any case law that directly addresses applying section 2201(a) to a foreign bigamous marriage, in which the applicable foreign law allows bigamy, we conclude there is sufficient case law supporting application of section 2201(a) to the Lebanese marriage.

20

*McDonald*, *supra*, 6 Cal.2d 457, and *Brandt v. Brandt*, *supra*, 32 Cal.App.2d 99, do not address the interplay between sections 308 and 2201(a) because they were decided before enactment of section 2201 and its predecessor statute, Civil Code section 4401 (§ 2201 did not substantively change former Civil Code Section 4401, added by Stats. 1969, c. 1608, § 8). However, *McDonald* and *Brandt* state that in California, a bigamous marriage is against public policy and therefore invalid. The court in *McDonald* stated that even though, normally, the validity of a marriage is governed by the law of the situs of the marriage, an exception applies if the marriage is contrary to California's public policy, such as a polygamous marriage. (*McDonald*, *supra*, at pp. 459-460 ["An exception, of course, arises when the marriage is regarded as odious by common consent of nations, e. g., where it is polygamous."]) *McDonald* supports the proposition that, although normally under section 308 the law of the jurisdiction where a marriage is entered determines whether the marriage is valid, California law supersedes the other jurisdiction's law if the marriage violates California public policy against bigamy. (*McDonald*, *supra*, at pp. 459-460.)

*Brandt* likewise supports the proposition that a bigamous foreign marriage violates California public policy and is void under California law. In *Brandt*, Peter Clippage, also known as Peter Brandt, married Mary Barany in Pennsylvania and then deserted her. While she was still living and the marriage between her and Peter remained undissolved, Peter married Katherina Brandt in Illinois and then the couple moved to California. When Katherina discovered 22 years later that Peter was married to another woman, she

21

left him.  Peter brought an action to annul his marriage with Katherina and to adjudicate title to real property acquired by the parties during the marriage.  Katherina filed a cross-complaint also requesting annulment of the marriage and requested the court to award her all of the property.  Peter and Katherina stipulated to Katherina proceeding with her cross-complaint for annulment without contest by Peter, and the trial court entered a decree annulling the marriage.  Peter appealed from that portion of the judgment awarding the residence to Katherina.

The court in *Brandt* noted that Peter did not challenge the decree annulling the marriage, nor could he, because "'[a]s a matter of public policy, the court should, at the first opportunity, enter its decree annulling such a marriage, to the end that the public be protected so far as possible from the evils of such unlawful acts and to prevent the innocent from suffering therefrom.'"  (*Brandt v. Brandt*, *supra*, 32 Cal.App.2d at p. 101.)

Samir cites *Tejada*, *supra*, 179 Cal.App.4th 973, for the proposition that "[o]ne may never legally remarry prior to dissolution of his or her existing marriage."  This principle is codified in section 2201(a).  *Tejada* does not address the issue of whether section 2201(a) governs a foreign marriage which is valid under the law of the situs of the marriage.  The only mention of section 2201 in *Tejada* is in the procedural history section of the opinion, which mentions that the putative wife argued in the trial court that her marriage was bigamous and thus void under section 2201.  The statement of procedural facts also states that the trial court found the marriage was either void or void because the putative wife was already married.  (*Tejada*, *supra*, 179 Cal.App.4th at p. 978.)  *Tejada* is

22

not helpful here because the issue in *Tejada* was not whether section 2201 applied to a bigamous marriage, but whether the parties' bigamous marriage was a putative marriage requiring division of the quasi-marital property as community property. (*Tejada*, *supra*, at p. 977.)

Mayssa cites *Seaton*, *supra*, 200 Cal.App.4th 800, for the proposition that the validity of a marriage is tested based on the law of the place where it occurs. (*Id*. at p. 807.) But even assuming the Lebanese marriage was valid under Lebanese law and must be recognized as such under section 308, the marriage is nevertheless void under section 2201(a) because California does not recognize bigamous marriages.

In *Seaton*, *supra*, 200 Cal.App.4th 800, Patricia Seaton married Richard LaForm in 1987. After separating from him, in 1988, Patricia married Henry Marquez in Nevada. Thereafter, Patricia's marriage to Richard was dissolved. Then Patricia married Jeffrey Seaton in 1991, in California. In 2008, Jeffrey filed a petition for legal separation and Patricia filed a request for dissolution. The court permitted Jeffrey to file an amended petition requesting a judgment of nullity based on Patricia's marriage to Henry. After a court trial on Jeffrey's petition, the court nullified the marriage between Jeffrey and Patricia on the ground Patricia was married to Henry when she married Jeffrey. (*Seaton*, *supra*, at p. 805.) The *Seaton* court held on appeal that Patricia's marriage to Henry was void because Patricia was still married to Richard when she married Henry. The *Seaton* court therefore held that Patricia's marriage to Jeffrey was not bigamous and was thus valid. (*Id*. at pp. 806, 808.)

23

The court in *Seaton* was required to consider Nevada law to determine the validity of Henry's marriage to Patricia because Jeffrey argued Patricia's marriage to Henry in Nevada had not been "dissolved or adjudged a nullity before the date of the subsequent marriage" to Jeffrey. (§ 2201, subd. (a)(1).) The question of whether Patricia's marriage to Jeffrey was void turned on whether she was married to Henry when she married Jeffrey. (§ 308, subd. (a); *Colbert v. Colbert* (1946) 28 Cal.2d 276, 280.) The *Seaton* court noted that Nevada law was consistent with California law prohibiting bigamous marriages as void, even without any divorce decree or annulment or other legal proceedings. (*Seaton*, *supra*, 200 Cal.App.4th at pp. 807-808 ["In Nevada, as in California, a bigamous marriage is void. . . [a]nd the invalidity of a void marriage may be shown collaterally in any proceeding in which the fact of marriage may be material."])

As in *Seaton*, the instant case concerns the issue of bigamy, with one of the marriages entered into out of state. But in the instant case, unlike in *Seaton*, the second marriage was valid under Lebanese law which allows bigamy. *Seaton* does not address the issue raised in the instant case of applying section 2201(a) to a bigamous foreign marriage that is valid under the law of another country.

In addition to the foregoing case law, Penal Code section 281 demonstrates that in California a bigamous marriage is against public policy and therefore application of section 2201(a) to such a bigamous marriage is proper even if the bigamous foreign marriage is valid under the law of the situs of the marriage. Penal Code section 281 states that "Every person having a spouse living, who marries . . . is guilty of bigamy."

(Pen. Code, § 281, subd. (a).) Penal Code section 281 further states in relevant part that, "[u]pon a trial for bigamy, . . . when the second marriage . . . took place out of this state, proof of that fact, accompanied with proof of cohabitation thereafter in this state, is sufficient to sustain the charge." (Pen. Code, § 281, subd. (b).)

Mayssa cites *Estate of Bir* (1948) 83 Cal.App.2d 256, for the proposition that California public policy does not preclude California courts from recognizing foreign bigamous marriages. While that may be true under *Bir* as to intestate succession, it is not the case where the parties to the marriage are alive and seeking adjudication of their rights to support, child custody, or division of their assets under California family law.

In *Estate of Bir*, *supra*, 83 Cal.App.2d 256, the court recognized under principles of comity, the decedent's marriage entered in India, where the laws of India permitted bigamous marriages. *Bir* is inapposite because the court's recognition of the bigamous foreign marriage was solely in the context of a petition to determine intestate succession by the decedent's two wives, who were residents of India, not California.

The court in *Wong v. Tenneco, Inc.* (1985) 39 Cal.3d 126, 135-136, explained that the public policy exception to the comity doctrine "precludes application of a foreign state's law where to do so would violate California's public policy. [Citations.] The standard, however, is not simply that the law is contrary to our public policy, but that it is so offensive to our public policy as to be 'prejudicial to recognized standards of morality and to the general interests of the citizens . . . .' [Citations.]" (*Id*. at p. 135.) Even when a foreign law offends public policy, "it may still be applied in a limited context where the

25

potential harm is minimal" (*id*. at p. 136.), as the court found in *Estate of Bir*, *supra*, 83 Cal.App.2d at pp. 261-262 [*in the context of intestate succession only*, India's law permits polygamy to be applied under principles of comity]. (*Wong v. Tenneco, Inc.*, *supra*, at p. 136; italics added.)

The court in *Bir* stated that "Where only the question of descent of property is involved, 'public policy' is not affected. . . . True, there are cases holding invalid polygamous marriages entered into in places where such marriages are legal, but in each such case found, *all the parties were living and no question of succession to property was considered*. . . . 'Public policy' would not be affected by dividing the money equally between the two wives, particularly since there is no contest between them and they are the only interested parties." (*Estate of Bir*, *supra*, 83 Cal.App.2d at pp. 261-262.)

In the instant case, unlike in *Estate of Bir*, *supra*, 83 Cal.App.2d 256, the parties to the bigamous marriage are both living, there is a dispute over their marital rights to support and the division of property under the California Family Code. Section 2201(a), Penal Code section 281, and case law supports the determination that bigamous marriages in California are against public policy, illegal, and thus void. We therefore conclude the trial court properly ruled that the Lebanese bigamous marriage was void under section 2201(a).

26

## VII.

## SUFFICIENCY OF EVIDENCE TO OVERCOME

## PRESUMPTION OF MARRIAGE

Mayssa argues there was insufficient evidence to overcome the presumption that the Lebanese marriage was valid. We disagree.

As discussed above, the validity of the Lebanese marriage is not disputed on appeal. Judge Bennett tried the issue and found the Lebanese marriage was valid under Lebanese law. Judge Singley subsequently accepted that finding as true but raised sua sponte the issue of whether the Lebanese marriage was nevertheless void as bigamous under section 2201(a). During the trial of that issue, Judge Singley permitted the parties to present evidence on whether the Lebanese marriage was bigamous. Samir presented sufficient evidence establishing that the Lebanese marriage was a void bigamous marriage by presenting evidence he was already married to Angeles when he married Mayssa in Lebanon. Such evidence included Samir and Angeles's marriage certificate and Samir's testimony that he married Angeles in 1987, and had remained married to her for almost 35 years, including when he married Mayssa in Lebanon in 2012.

The instant appeal concerns whether Judge Singley erred in applying section 2201(a) to the Lebanese marriage, which the trial court found was valid under Lebanese law. We conclude Judge Singley properly applied section 2201(a) and there was sufficient evidence to support his finding the Lebanese marriage was bigamous and therefore void under section 2201(a).

27

## VIII.

## DISPOSITION

The judgment is affirmed. Samir is awarded his costs on appeal.

CERTIFIED FOR PUBLICATION

CODRINGTON _____
J.

We concur:

RAMIREZ _____
          P. J.

MILLER _____
          J.