Filed 6/15/26  Marriage of Chevallier and Rodriguez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of ASTRID CHEVALLIER and ANASTASIO GARCIA RODRIGUEZ. | H052644, H052906 (Santa Clara County Super. Ct. No. 24FL000247) |
| ASTRID CHEVALLIER, Appellant, v. ANASTASIO GARCIA RODRIGUEZ, Respondent. | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING NO CHANGE IN JUDGMENT |

Appellant's petition for rehearing is denied.  The court orders that the opinion filed May 15, 2026 be modified as follows, without change in the judgment:

The word "Philadelphia" is changed to "Pittsburgh" in the fifth sentence of the second full paragraph on page 2.

_____

Grover, Acting P. J.

_____

Lie, J.

_____

Bromberg, J.

Filed 5/15/26  Marriage of Chevallier and Rodriguez CA6 (unmodified opinion)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of ASTRID CHEVALLIER and ANASTASIO GARCIA RODRIGUEZ. | H052644, H052906 (Santa Clara County Super. Ct. No. 24FL000247) |
| ASTRID CHEVALLIER, Appellant, v. ANASTASIO GARCIA RODRIGUEZ, Respondent. | |

Astrid Chevallier petitioned to dissolve her purported domestic partnership to Anastasio Garcia Rodriguez.  The trial court determined Chevallier did not have a subjective good faith belief in the existence of a valid registered domestic partnership and denied her request to be declared a putative domestic partner entitled to spousal support.  Chevallier now challenges that order and an order denying her motions for attorney fees and for renewal or for a new trial.  Because Chevallier has not shown the evidence compels a finding in her favor as a matter of law, we will affirm the orders denying putative spouse status, spousal support, and attorney fees.  We will dismiss Chevallier's appeal of the order denying renewal or a new trial.

## I.    BACKGROUND

Chevallier and Rodriguez were in a relationship from April 2012 to November 2023.  After the couple separated, Chevallier petitioned to dissolve the purported

domestic partnership, arguing that she was a putative domestic partner since July 2012 and entitled to temporary spousal support and need-based attorney fees.

At the petition hearing, Rodriguez and Chevallier testified that they never registered or attempted to register as domestic partners within the State of California. Chevallier testified she was not aware they had to register as a domestic partners with the state until the parties broke up. She believed she was in a legal domestic partnership with Rodriguez because they both signed affidavits with Rodriguez's employers to obtain health insurance. Chevallier is from France; she understood such a domestic partnership would not be recognized in France without additional steps but trusted Rodriguez to complete the process to become domestic partners in the United States.

Chevallier testified that they first signed an affidavit for Rodriguez's employer establishing themselves as domestic partners in July 2012. Chevallier was unable to obtain a copy of that affidavit but testified the affidavit had identical or substantially identical terms to an affidavit the parties signed for another employer of Rodriguez in 2019. She believed the effect of the 2012 affidavit "was to make [the] relationship official as a domestic partnership" because Rodriguez wanted to prove Chevallier could trust him by establishing their relationship. Chevallier understood the affidavits had implications for health insurance, but she had health insurance from France throughout their relationship and rarely went to the doctor due to her healthy lifestyle. She used insurance through Rodriguez's employer to cover medical bills when she fell from a horse but used her French health insurance when she had a medical emergency in Philadelphia. Chevallier testified the parties may have signed similar affidavits for two other companies.

Rodriguez testified that he signed a single employment affidavit of domestic partnership in 2019 to allow Chevallier to obtain health insurance from his employer.[1]

---

[1] Rodriguez testified that Chevallier first received health insurance through his employer in 2018 because she was part of his health coverage.

He thought that Chevallier could use the benefit because she rides horses and did not think the document had implications on their relationship. Rodriguez testified his employer did not require them to be a registered domestic partnership to obtain benefits. In the 2019 affidavit, he and Chevallier attested that they had been "engaged in an exclusive domestic partner relationship for more than six (6) months and intend to remain so indefinitely" and would provide supporting documentation upon request. The affidavit did not define "domestic partner."

Rodriguez referred to Chevallier as his wife to others, including his coworkers and friends. He is from Spain and testified it is common for older couples from Spain to call their partner wife or husband. Chevallier testified that Rodriguez told her multiple times that they were "partners in life." Chevallier sometimes called Rodriguez her husband but clarified that they were not married.

Rodriguez testified that he closed a joint Wells Fargo checking account without obtaining Chevallier's permission after their relationship ended because Chevallier had withdrawn all the money from the account. Rodriguez and Chevallier shared automobile insurance policies for both their vehicles that were automatically paid from the Wells Fargo account. Chevallier had Rodriguez listed as the sole beneficiary on her French life insurance policy. They filed taxes separately and did not buy property together.

The trial court denied Chevallier's request to be deemed a putative domestic partner. The court found the evidence did not establish that Chevallier held a subjective good faith belief during the relationship that she was engaged in or had made efforts to create a domestic partnership. There had been no efforts to create a legal domestic partnership. Chevallier was a sophisticated, mature woman with advanced education and would have remembered whether she did anything to create a domestic partnership before she signed the affidavit in 2012. Her testimony stating that the parties signed an affidavit three to four months after the parties started dating attesting to an exclusive domestic partnership for more than six months called into question her good faith belief that the

parties had been in a domestic partnership. The trial court determined it was more credible the documents were used to qualify for an eligible group health and welfare plan. Although Chevallier had health insurance benefits from France and lived a generally healthy lifestyle, she engaged in inherently dangerous activities by riding horses and used the health benefits obtained through Rodriguez's employer when she suffered a serious fall. The trial court denied Chevallier's request for spousal support and reserved the ruling on her request for attorney fees. (Fam. Code, § 2030.) Chevallier appealed five months later.

Chevallier moved for renewal (Code Civ. Proc., § 1008, subd. (b)) or for a new trial (Code Civ. Proc., § 657).[2] She introduced emails between her and Rodriguez discussing medical benefits as qualifying domestic partners in 2012, documents showing the hack of the 2012 employer's data in 2014, and relocation packages requiring domestic partner status, and detailed other life decisions supporting a domestic partnership. She emphasized the existence of other employer affidavits establishing a domestic partnership and stressed that she received health benefits from Rodriguez's employer in 2018. She also emphasized her belief that she made a good faith effort to create a valid domestic partnership by signing the 2019 affidavit in front of a notary. Chevallier argued that the trial court wrongly inferred the content of the 2012 affidavit, the dangerousness of horse riding, and the reasons she used Rodriguez's benefits after her injury. Rodriguez objected to the motion as untimely and argued the motion did not provide new facts or circumstances to warrant a new trial.

---

[2] We deemed Chevallier's motion to augment the record with her motion for renewal or a new trial and her corresponding reply as a request for judicial notice and deferred consideration of the request for consideration with the merits of the appeal. We later granted Chevallier's motion to augment the record with the same documents. As the documents in Chevallier's request for judicial notice are already in the record, her request for judicial notice is denied.

The trial court, construing Chevallier's motion as a motion for renewal and for a new trial, denied the motion. The trial court determined the motion for a new trial was untimely and Chevallier's arguments concerning surprise and new facts were deficient on the merits. It also denied Chevallier's motion for attorney fees due to her lack of putative domestic partner status. Chevallier timely appealed.

## II.    DISCUSSION

### A. TIMELINESS OF APPEALS

We deferred consideration of Rodriguez's motion to dismiss Chevallier's appeals of the May 2024 order denying putative domestic partner status and the January 2025 order denying renewal, a new trial, and attorney fees as untimely for consideration with the merits of the appeal. After the hearing concluded on April 23, 2024, the trial court instructed Rodriguez's counsel to prepare a written order. The court filed the written order on May 23, 2024. Rodriguez's counsel electronically transmitted the order to Chevallier's counsel on May 23, 2024, and filed a proof of electronic service on December 2, 2024. Chevallier appealed the May 2024 order denying putative domestic partner status on October 18, 2024. She filed her motion for renewal or a new trial on October 17, 2024 and appealed the trial court's January 6, 2025 order denying her motion for renewal or a new trial and her motion for attorney fees on January 10, 2025.

#### 1. May 2024 Order

A reviewing court does not have jurisdiction to consider an untimely appeal. (*K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 881; Cal. Rules of Court, rule 8.104(b).) An appeal is timely if filed up to 180 days after entry of judgment, but the time to appeal is shortened to 60 days if the superior court clerk serves a "Notice of Entry" of judgment or a file-endorsed copy of the judgment on the appealing party, showing the date either was served, or the appealing party serves or is served with a "Notice of Entry" of judgment or a file-stamped copy of the judgment, accompanied by proof of service. (Cal. Rules of Court, rule 8.104(a)(1).) Where a minute order directs

5

the preparation of a written order, the entry date is the date the signed order is filed. (Cal. Rules of Court, rule 8.104(c)(2).) We apply California Rules of Court, rule 8.104(a)(1) " 'strictly and literally according to its terms.' " (*Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 902–903.)

The order denying putative domestic partner status was entered on May 23, 2024, the date the trial court filed the signed written order it had instructed Rodriguez's counsel to prepare after the hearing concluded. The record does not contain a notice of entry of judgment or proof of service from the superior court clerk. Rodriguez's counsel electronically transmitted the May 2024 order to Chevallier's counsel on May 23, 2024, but did not file a proof of service until December 2, 2024. Filing proof of service after serving a copy of the judgment does not cure the defect to include a proof of service with the copy of judgment to begin the 60-day period to appeal. (*Thiara v. Pacific Coast Khalsa Diwan Society* (2010) 182 Cal.App.4th 51, 57–58.) Chevallier timely appealed the order denying putative domestic partner status within 180 days after entry of the order on May 23, 2024. (Cal. Rules of Court, rule 8.104(a)(1)(C).)

### 2. January 2025 Order

The trial court denied Chevallier's motion for renewal or a new trial and her motion for attorney fees on January 6, 2025. Rodriguez argues Chevallier's appeal of the January 2025 order denying renewal or a new trial should be dismissed because her motion for a new trial was untimely filed and heard after the trial court's jurisdiction had expired. Chevallier argues her appeal is timely because she simultaneously filed a timely motion for renewal. While a motion for renewal may be filed at any time (*D.R.S. Trading Co., Inc. v. Barnes* (2009) 180 Cal.App.4th 815, 820, fn. 2), an order denying a renewed motion is not appealable. (*Global Protein Products, Inc. v. Le* (2019) 42 Cal.App.5th 352, 363–364.) We evaluate the timeliness of the motion for a new trial.

A notice of intention to move for new trial must be filed within the earlier of 15 days of the date any party served upon the moving party written notice of entry of

6

judgment, or 180 days after the entry of judgment.  (Code Civ. Proc., § 659, subd. (a)(2).)  Serving a file-stamped copy of the judgment constitutes written notice of entry of judgment and starts the statutory time period to bring a motion for a new trial.  (*Palmer v. GTE California, Inc.* (2003) 30 Cal.4th 1265, 1267–1268, 1277.)  Chevallier moved for a new trial almost five months after Rodriguez's counsel started the statutory time period by electronically serving the file-stamped order denying putative domestic partner status on May 23, 2024.  The lengthy delay in moving for a new trial ultimately deprived the trial court of jurisdiction to rule on the motion.  (See *id.* at pp. 1270–1271.)

We will dismiss Chevallier's appeal of the January 2025 order denying the motion for renewal or a new trial and therefore do not address the merits of her arguments as to that denial.  However we decline to dismiss as frivolous Chevallier's timely appeals of the May 2024 order denying putative domestic partner status and of the January 2025 order denying attorney fees.  (*Forthmann v. Boyer* (2002) 97 Cal. App. 4th 977, 986–987.)

### B. CHEVALLIER'S EVIDENCE OF PUTATIVE DOMESTIC PARTNERSHIP DOES NOT COMPEL A FINDING IN HER FAVOR

Domestic partners are "two adults who have chosen to share one another's lives in an intimate and committed relationship of mutual caring."  (Fam. Code, § 297, subd. (a).)  A domestic partnership is established in California when both partners file a declaration of domestic partnership with the Secretary of State.  (Fam. Code, § 297, subd. (b).)  Registered domestic partners "shall have the same rights, protections, and benefits, and shall be subject to the same responsibilities, obligations, and duties under law, whether they derive from statutes, administrative regulations, court rules, government policies, common law, or any other provisions or sources of law, as are granted to and imposed upon spouses."  (Fam. Code, § 297.5, subd. (a).)  Legal domestic partnership became available in 2020 to opposite sex couples under the age of 62.  (Fam. Code, § 297, as amended by Stats. 2019, ch. 135, § 1.)

7

A person who does not register the domestic partnership but believes in good faith that the domestic partnership was validly registered is entitled to protection as a putative registered domestic partner. (*In re Domestic Partnership of Ellis & Arriaga* (2008) 162 Cal.App.4th 1000, 1003 (*Ellis*), disapproved on another ground in *Ceja v. Rudolph & Sletten, Inc.* (2013) 56 Cal.4th 1113 (*Ceja*).) The good faith inquiry is subjective and focuses on the actual state of mind of the alleged putative partner to determine whether he or she held a genuine and honest belief in facts which would establish the validity of the partnership. (*Ceja*, at pp. 1116, 1128.) A court must consider the totality of the circumstances such as the reasonableness of the alleged belief, any efforts undertaken to create a valid partnership, the parties' personal backgrounds and experience, and all circumstances surrounding the relationship including objective evidence pointing to a partnership's invalidity. (*Ibid.*)

In examining whether Chevallier met her burden at trial, we review the trial court's findings regarding putative domestic partner status for substantial evidence (*Ceja*, *supra*, 56 Cal.4th at p. 1119), indulging all reasonable inferences which may be drawn from the evidence. (*In re Michael D.* (2002) 100 Cal.App.4th 115, 125–126 (*Michael D.*).) We view the evidence in the light most favorable to the prevailing party and do not reweigh the evidence or determine credibility. (*Mathews v. Happy Valley Conference Center, Inc.* (2019) 43 Cal.App.5th 236, 251 (*Mathews*).) Generally under the substantial evidence standard, we consider whether contradicted or uncontradicted substantial evidence supports the trial court's findings. (*Ibid.*) But where, as here, the trial court determined the appealing party did not meet its burden, the question before us is whether the evidence compels a finding for that party as a matter of law. (*Symons Emergency Specialties v. City of Riverside* (2024) 99 Cal.App.5th 583, 597 (*Symons Emergency Specialties*).) Under that analysis, Chevallier must meet a higher burden to show the evidence was (1) uncontradicted and unimpeached and (2) of such character as to leave no room for a determination that it was insufficient to support a finding. (*Ibid.*)

We conclude Chevallier has not shown the evidence was of such character to compel a finding that she had a subjective good faith belief in a valid domestic partnership. (*Ceja*, *supra*, 56 Cal.4th at pp. 1116, 1128.) Chevallier concedes that she did not know domestic partners had to register with the state until after the couple separated. She believed the parties were in a legal partnership since July 2012 due to the 2012 affidavit and 2019 notarized affidavit used to obtain health benefits with Rodriguez's employers.[3] But Chevallier testified that the affidavits had identical or substantially identical terms such that both required the parties to attest that they were in an exclusive domestic partner relationship for more than six months, and the parties signed the 2012 affidavit only about three months after they started dating. Both affidavits were also signed before legal domestic partnership became available to opposite sex couples in 2020. (Fam. Code, § 297, as amended by Stats. 2019, ch. 135, § 1.) Although Chevallier proclaims this limitation shows the parties "could not have done more than what they had already done to formalize their domestic partnership at the time they signed their paperwork," it in fact demonstrates that the parties could not have created a legal domestic partnership at the time they signed the affidavits. (*In re Marriage of Aviles & Vulovic* (2022) 79 Cal.App.5th 694, 701 (*Aviles*).) It was also reasonable for the trial court to infer that Chevallier relied on the affidavits to obtain health insurance rather than to create a legal domestic partnership. (*Michael D.*, *supra*, 100 Cal.App.4th at p. 126.)

Representing herself on appeal, Chevallier argues the trial court applied an objective standard by assessing the parties' lack of effort to create a registered domestic partnership and finding her testimony regarding their efforts was not reasonable. While the reasonable person test does not drive the putative spouse analysis, the subjective

---

[3] Chevallier also argues the trial court disregarded Rodriguez's testimony that Chevallier had access to health coverage through another employer without having to sign an affidavit.

9

standard articulated in *Ceja* does require assessment of credibility to determine whether an individual held a genuine and honest belief in facts supporting the validity of the partnership. (*Ceja*, *supra*, 56 Cal.4th at p. 1116.) The trial court properly considered the reasonableness of Chevallier's claimed belief along with her purported efforts to create a valid partnership and the objective circumstances pointing to the partnership's invalidity to assess the genuineness of her belief. (*Id.* at pp. 1116, 1128.) Chevallier also argues the evidence in the record, such as her use of health benefits through Rodriguez's employer, should be interpreted to demonstrate her belief that the couple was in a legally valid domestic partnership. She also asks that we reconsider allegedly perjurious testimony by Rodriguez. But in our review, we do not reweigh the testimony or consider inferences that could have been drawn another way. (*Mathews*, *supra*, 43 Cal.App.5th at p. 251.)

Chevallier notably argues that registration is irrelevant under the putative domestic partner doctrine as long as a party believes in good faith that the partnership is legally valid. In *Ceja*, our Supreme Court established that an alleged putative spouse's belief in the validity of a marriage need not be objectively reasonable. (*Ceja*, *supra*, 56 Cal.4th at p. 1116.) The *Ceja* plaintiff brought a wrongful death action as the putative spouse of her deceased husband. (*Ibid.*) The plaintiff argued she knew the decedent had filed for divorce before they wed but did not know exactly when the divorce became final; the couple had a well-attended marriage ceremony and lived as husband and wife until the decedent's death. (*Id.* at pp. 1116–1118.) The plaintiff asserted she did not read her marriage license stating the decedent had no previous marriages or decedent's final divorce paperwork. (*Id.* at pp. 1117–1118.) Although the decedent's divorce from his first wife was actually not finalized until a few months after his marriage to plaintiff, the Supreme Court held that the plaintiff could be a putative spouse if her assertions were credible. (*Id.* at pp. 1117–1118, 1129.)

In reaching its conclusion, the *Ceja* court disagreed with the objective good faith standard first articulated in *In re Marriage of Vryonis* (1988) 202 Cal.App.3d 712

10

(*Vryonis*).  (*Ceja, supra*, 56 Cal.4th at pp. 1125–1126, citing *Vryonis*, at p. 721.)  In *Vryonis*, an Iranian citizen (Fereshteh) had married a college teacher (Speros) by performing a private marriage ceremony conforming to the marriage requirements authorized by the Moslem sect of which Fereshteh was an adherent.  (*Ceja*, at p. 1125, citing *Vryonis*, at p. 716.)  Although Fereshteh did not know the requirements of California marriage law and the marriage did not create a valid California marriage, Fereshteh justifiably relied on Speros's assurances that they were husband and wife.  (*Ceja*, at p. 1125, citing *Vryonis*, at p. 716.)  *Ceja* disagreed with the *Vryonis* court's holding that Fereshteh's belief in the existence of a valid marriage was objectively unreasonable and she therefore lacked the good faith required to establish putative spouse status.  (*Ceja*, at pp. 1125–1126, citing *Vryonis*, at p. 721.)

The *Ceja* court relied on *Sancha v. Arnold* (1952) 114 Cal.App.2d 772 (*Sancha*) to explain that the reasonableness of a party's belief may still inform the subjective good faith inquiry.  (*Ceja, supra*, 56 Cal.4th at pp. 1127–1128.)  The claimant in *Sancha* testified that she and the decedent had entered a legally recognized common law marriage in Nevada and lived together as husband and wife in California for 24 years.  (*Ceja*, at p. 1127, citing *Sancha*, at pp. 774–775.)  Recognizing that the belief in the existence of a valid marriage is the essential basis of a putative marriage, the *Sancha* court held the claimant was putative spouse of the decedent because she honestly and reasonably thought she was the decedent's wife.  (*Ceja*, at p. 1127, citing *Sancha*, at pp. 777–778.)

We acknowledge that *Ceja*, *Vryonis*, and *Sancha* concerned mistakes of fact and law when entering into a marriage; domestic partnerships may not carry the same status or symbolic or social meaning as marriages, and the procedures for entering into these two contractual relationships are not identical.  (*Estate of Wilson* (2012) 211 Cal.App.4th 1284, 1298–1299.)  *Ceja* disapproved of *Ellis* only to the extent *Ellis* applied an objective good faith inquiry (*Ceja, supra*, 56 Cal.4th at p. 1126), and California law requires that parties register with the state to create a valid domestic

partnership entitling those persons to the rights and benefits granted to spouses. (*Ellis*, *supra*, 162 Cal.App.4th at p. 1007.) Indeed, the Legislature has substantially equalized the status of registered domestic partners and spouses. (*Koebke v. Bernardo Heights Country Club* (2005) 36 Cal.4th 824, 836.) Chevallier asserts her situation is similar to the one in *Ellis*, where an individual who had signed and notarized a declaration of domestic partnership but never filed the declaration with the California Secretary of State was allowed to plead and prove a good faith belief in the existence of a registered domestic partnership. (*Ellis*, at pp. 1003–1004.) The *Ellis* court considered whether the individual could be considered a putative domestic partner because he had attempted to register with the state, stating that a person is entitled to putative domestic partner status only if he or she believes "in the validity of his or her *registered* domestic partnership." (*Id.* at p. 1008, italics added.) Chevallier and Rodriguez in contrast made no effort to create a valid domestic partnership by registering their partnership with the Secretary of State. (*Id.* at p. 1011; *Ceja*, at pp. 1116, 1128.)

Chevallier has not shown the evidence compels a finding that she had a good faith belief that the parties were in a legally valid domestic partnership. (*Ceja*, *supra*, 56 Cal.4th at p. 1119; *Symons Emergency Specialties*, *supra*, 99 Cal.App.5th at p. 597.) Because Chevallier is not a putative domestic partner, she is not entitled to attorney fees. (*Aviles*, *supra*, 79 Cal.App.5th at p. 701.)

### III.   DISPOSITION

The April 2024 order denying putative domestic partnership status and spousal support and the January 2025 order denying attorney fees are affirmed. Chevallier's appeal of the January 2025 order denying her motion for renewal or a new trial is dismissed for the reasons explained herein. Rodriguez shall recover costs on appeal by operation of California Rules of Court, rule 8.278(a).

_____

Grover, Acting P. J.

**WE CONCUR:**

_____

Lie, J.

_____

Bromberg, J.

H052644, H052906
*Chevallier v. Rodriguez*